Filed 5/2/13  P. v. Torrez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B237122 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. GA082246) |
| JOHN DANIEL TORREZ et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County.  Michael Villalobos, Judge.  Affirmed.

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant John Daniel Torrez.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant Christie Lynn Brown.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellants John Daniel Torrez (Torrez) and Christie Lynn Brown (Brown) appeal from judgments entered against them following their convictions by jury of first degree burglary (Pen. Code, § 459).[1] The jury found Torrez guilty of two counts, and Brown guilty of one count. Torrez waived a jury trial on his prior conviction allegations and the trial court found true that he had suffered a prior serious felony conviction for attempted robbery (§ 664/211) within the meaning of section 667, subdivision (a)(1) and the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and that he had suffered two prior convictions within the meaning of section 667.5, subdivision (b). Torrez was sentenced to 15 years in state prison, consisting of four years on the first count of burglary doubled pursuant to the Three Strikes law, plus five years for the prior serious felony and two one-year enhancements pursuant to section 667.5, subdivision (b). The court imposed a concurrent term of four years for the second count of burglary. Brown was sentenced to state prison for two years.

Torrez contends the evidence was insufficient to support his conviction for first degree burglary and that the four-year concurrent sentence imposed for the second count of burglary should have been stayed pursuant to section 654. Brown contends the court erred in excluding relevant evidence establishing the defense of duress.

Finding no merit in the contentions, we affirm the judgments.

## FACTS

### *Prosecution Evidence*

Ronald Hansen was the manager of a gated 37-unit apartment complex on Live Oak Street in San Gabriel. Access to the building was through a secured pedestrian gate that required either a key or a code to open. Tenants could also "buzz in" visitors through the pedestrian gate. A secured drive-through gate to the parking garage which was "directly underneath the apartments" required a remote control opener to enter and exit. Security cameras triggered by motion detectors were placed at the pedestrian and drive-through gates, and by the elevator and stairwell in the parking garage. Hansen

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

monitored the live feed in his apartment and the cameras recorded when motion was detected.[2]

On November 27, 2010, around midnight, Hansen saw Brown's car pull up to the drive-through gate. Torrez walked over to the pedestrian gate and appeared to be using the telephone that dialed tenant apartments. Torrez entered the complex. Hansen next saw Torrez in the stairwell to the garage and then shortly thereafter in the garage walking between a Honda Accord and a Volvo Wagon owned by Anthony Faure, a tenant of the complex. Hansen saw Torrez walk out and exit the garage through the drive-through security gate.

Approximately 10 to 15 minutes later Hansen saw Brown's car again. This time Brown pulled up outside and the drive-through gate opened and Brown entered the garage. The car did not belong to a tenant and Hansen went to the garage to investigate. Some tenants of the complex stored property by the wall at the front of their parking stalls. Hansen saw Brown park her vehicle in an empty garage stall. Torrez and Brown got out of the car and Hansen saw them looking at tenants' property stored nearby. Hansen called the police because neither Torrez nor Brown were tenants at the complex. He watched them from approximately 50 yards away as Brown moved the car to a different stall and she and Torrez again looked at tenants' property. During this time, Faure drove out of the parking garage in his Volvo. As Hansen walked back and forth in the garage waiting for the police to arrive, he saw Torrez seated in the front passenger seat of Brown's car when she drove past him.

San Gabriel Police Officer Nhat Huynh responded to the apartment complex and entered the garage when a resident opened the gate for him. He saw Brown drive slowly through the garage and stop close to him. Brown consented to a search of the car and Officer Huynh found a gym bag containing various tools including screwdrivers, a wrench, and a wire cutter. Officer Huynh also found a small black remote control in

---

[2] Video surveillance tapes were played for the jury at trial and admitted into evidence (designated People's exhibits 1 and 2).

3

plain sight between the front driver and passenger seats of Brown's car which opened the drive-through gate to the parking garage. Torrez admitted the gym bag was his and a flashlight was found in his right front pants pocket.

Faure returned to the garage and saw that the console and glove box of his Honda Accord were open. Coins were missing from the glove box and the remote control gate opener that he usually kept on the visor was also missing. Faure identified the remote control gate opener found in Brown's car as his. Faure did not know Torrez or Brown and did not give them access to the garage or permission to take his property.

### Defense Evidence

Brown testified that she loaned Torrez her car earlier in the day. When he returned the car late at night he asked her to give him a ride to the apartment complex. Torrez told Brown he planned to stay with friends that lived there but asked her to wait for him. Brown did not see where Torrez went when he got out of her car and she fixed the plastic covering on the broken back window of the car while waiting for him. Torrez returned to the car and Brown drove him to a nearby 7-Eleven. Torrez then asked Brown to drive him back to his friends at the apartment complex. Brown did not know how Torrez was able to open the drive-through gate to the parking garage but she drove inside. Brown could not remember when Torrez got out of the car but did remember him telling her to wait while he made sure he could stay with his friends.

When Brown pulled into a parking stall she heard a "crunch" and got out to inspect her car for damages. She saw Hansen and thought he needed to move his car so she moved to a different stall on a lower level and again got out to inspect her car for damages. Torrez had not returned and Brown testified that she "got tired of waiting" and "went to leave." Torrez returned as she moved out of the parking stall and the police showed up as she tried to leave and blocked her exit. Brown testified that some of the tools in the gym bag were hers and that she used them to work on cars. She denied opening any car doors or looking in car windows.

Torrez did not present any evidence in his defense.

4

## DISCUSSION

**I.      Torrez's Conviction for First Degree Burglary**

Torrez does not dispute he burglarized the underground parking garage within the apartment complex.  Instead, he challenges the degree of the burglary.  He contends there was insufficient evidence to support his convictions for first degree burglary because the prosecution failed to prove that the garage was attached to the apartments and functionally connected with them.

First degree burglary is:  "Every burglary of an inhabited dwelling house, . . . .  [¶] [a]ll other kinds of burglary are of the second degree."  (§ 460, subds. (a) and (b).)  The term "inhabited" means "currently being used for dwelling purposes."  (§ 459.)

The term "inhabited dwelling house" has been interpreted broadly to include areas not normally considered part of a home's living space.  (*People v. Cruz* (1996) 13 Cal.4th 764, 779; *People v. Woods* (1998) 65 Cal.App.4th 345, 347–348.)  Whether an attached structure is part of an inhabited dwelling house for the purposes of sections 459 and 460 is determined by whether it "is an integral part of a dwelling, that is, functionally interconnected with and immediately contiguous to other portions of the house."  (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1404, disapproved on another ground by *People v. Dotson* (1997) 16 Cal.4th 547, 559.)

Courts have consistently determined an attached garage is part of an inhabited dwelling house.  In *People v. Cook* (1982) 135 Cal.App.3d 785, 795 (*Cook*), the court recognized that an attached garage and enclosed patio are not ". . . separate structures; rather, they are an integral part of [one's] residence, entry into any part of which would be sufficient to constitute a burglary.  [Citation.]"

In *People v. Moreno* (1984) 158 Cal.App.3d 109, 112, the court, relying on *Cook*, determined an attached garage need not have a door connecting the garage to the interior of the house to be part of the dwelling house.  The court stated, "[G]iven the fact that the garage was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house, simple logic would suffer were we to leap over this interrelationship to a conclusion that a garage is not part of a dwelling because no

5

inside entrance connects the two. [Citations.]" (*Ibid.*; see also *People v. Coutu* (1985) 171 Cal.App.3d 192, 193 [burglary of a storeroom connected to an inhabited dwelling by a breezeway constituted first degree burglary]; *In re Christopher J.* (1980) 102 Cal.App.3d 76, 78 [attached carport, with two sides open, deemed part of an inhabited "dwelling house"].)

Here, sufficient evidence supports the jury's finding of first degree burglary. The apartment building consisted of 37 units atop a gated underground parking garage. That the apartment building was inhabited—that is, currently used for dwelling purposes—was established by the testimony of Anthony Faure, a second-floor tenant, who lived in the building at the time of the burglary. Hansen, the building manager, testified the parking garage was "directly underneath the apartments." Logically therefore, the ceiling of the garage was the floor of the first floor apartments, establishing that the garage of the apartment building was attached and immediately contiguous to the residential areas of the building, and that the garage and apartments were located under the same roof. Hansen also testified the garage was accessible from the apartments by an internal elevator, and a stairwell. The garage was gated and access to it was restricted; the gate could only be opened by remote control. Tenants' cars were parked in the garage and some tenants stored personal property in their parking stalls. Under these facts, a reasonable jury could find that the garage was functionally connected with, contiguous to, and an integral part of the building's living quarters. (See *People v. Zelaya* (1987) 194 Cal.App.3d 73, 75–76 [garage and storage rooms located underneath an apartment building were part of an inhabited dwelling house].)

## II.     Torrez's Sentence Did Not Violate Section 654

Torrez contends that the trial court erred when it failed to stay execution of sentence on the second count of burglary because the two burglaries constituted an indivisible course of conduct.

Section 654 bars multiple punishments where "there is a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.) If a defendant commits more

than one offense, but "'all the offenses were incident to one objective, the defendant may be punished for any one of such offenses, but not for more than one.' (*People v. Perez* (1979) 23 Cal.3d 545, 551.)" (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214–1215, italics omitted.)  The statute does not apply to bar multiple punishments where the defendant held multiple objectives or intents.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)  "'Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the "intent and objective" of the actor.'" (*People v. Hairston, supra,* at p. 240, quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)  The amount of time that elapses between criminal acts, "although not determinative on the question of whether there was a single objective, is a relevant consideration." (*People v. Martin* (2005) 133 Cal.App.4th 776, 781.)  Where the offenses are separated in time, affording the defendant "'opportunity to reflect and to renew his or her intent before committing'" the next offense, the trial court may conclude that the defendant had multiple objectives and committed more than one criminal act meriting multiple punishments.  (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.)

We apply a substantial evidence standard of review.  "'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial.'  [Citations.]  '[T]he law gives the trial court broad latitude in making this determination.'  [Citation.]" (*People v. Wynn, supra,* 184 Cal.App.4th at p. 1215.)

In light of the record and what can be rationally deduced, substantial evidence supports the trial court's conclusion that Torrez entertained separate objectives.  The evidence showed that Torrez initially entered the parking garage via the pedestrian entrance and the stairwell connecting the building to the garage.  He stole property belonging to Faure and then left the scene with Brown.  They drove to 7-Eleven and Torrez went inside.  Torrez returned 15 minutes later and entered the parking garage a second time using the remote control gate opener he had earlier taken from Faure's car.

To support a "single objective" theory, Torrez contends that the first entry in which he stole the remote control gate opener was intended to facilitate the second entry

7

committed 15 minutes later when he stole some coins from Faure. An initial problem with Torrez's theory is that the evidence does not show that he took the gate opener and the coins at separate times.

The test for determining the separateness of alleged multiple burglaries for purposes of section 654 was whether the defendant had the opportunity to reflect after the first entry, and nevertheless entered the premises again. A more reasonable inference to be drawn from the evidence is that Torrez took the gate opener to facilitate his escape from the garage and then having had time to reflect during the trip to 7-Eleven returned a second time to steal whatever additional property he could find.

We find support in *In re William S.* (1989) 208 Cal.App.3d 313, where the defendant entered a home, took several items of property, and departed through the front door, which he left unlocked. He returned several hours later, entered through the unlocked door, took several more items, and again departed. (*Id.* at pp. 315–316.) Defendant argued that he committed only one burglary, but that even if he had committed two, he could be sentenced only once because leaving the door unlocked during the first entry evinced a single criminal intent because it was done to facilitate the second entry. (*Id.* at pp. 318–319.)

The court rejected the defendant's argument of a single criminal intent because he left the door unlocked in order to return a second time. The court found the defendant had ample opportunity to reflect between entries, constituting two separate burglaries. (*In re William S.*, *supra*, 208 Cal.App.3d at p. 317; see also *People v. Trotter* (1992) 7 Cal.App.4th 363, 366–367 [court imposed consecutive sentences for two assaults on the same victim occurring approximately one minute apart].)

Here, Torrez's entries into the parking garage are a "course of conduct divisible in time," consisting of separate offenses which may therefore be separately punished. (See *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)

**III.    Brown's Proffered Testimony Regarding the Defense of Duress Was Properly Excluded**

*A.    Contentions*

Brown raises numerous contentions related to the exclusion of testimony concerning her fear of Torrez. She contends the evidence was relevant and necessary to show appellant's state of mind as it related to her claim of duress. She also contends the evidence should have been admitted because the right to present a defense "trumps the rules of evidence."

*B.    Pertinent Facts*

During Brown's testimony her counsel attempted to put on evidence that Torrez was abusive towards Brown by asking her if she was afraid of Torrez. The court sustained the prosecutor's relevance objection. Torrez's counsel objected on the grounds of relevance and speculation when Brown's defense counsel again attempted to elicit similar testimony. At a sidebar discussion, Brown's counsel asserted that Brown continued to wait for Torrez, even though she did not want to be there, because he beat her, and his most recent prison stint was for beating her. The court stated that such testimony about Torrez's conduct and prison stay would be "highly prejudicial" and precluded under Evidence Code section 352. The court did not want the jury to speculate why Brown may be afraid of Torrez and refused Brown's counsel's request to give a limiting instruction to the jury prohibiting speculation. In sustaining the objections, the court stated that it was not clear based on the testimony in the case that Brown's fear was relevant or material. The court explained that the testimony showed that Brown was at the apartment complex "and doesn't know what's going on. She's just there to drop off a friend. I don't see this fear factor really coming into play."

*C.    Analysis*

To determine whether there was an abuse of discretion, we address two factors: (1) whether the testimony regarding Brown's alleged fear of Torrez satisfied the

"relevancy" requirement set forth in Evidence Code section 210,[3] and (2) if the evidence was relevant, whether the trial court abused its discretion under Evidence Code section 352[4] in finding that the probative value of the testimony outweighed its prejudicial effect. (*People v. Heard* (2003) 31 Cal.4th 946, 972.) The trial court has broad discretion to determine whether evidence is relevant and the trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) The trial court has no discretion to admit irrelevant evidence. (Evid. Code, § 350; *People v. Derello* (1989) 211 Cal.App.3d 414, 425–426.)

We find no abuse of discretion in the trial court's decision to exclude evidence of Brown's alleged fear of Torrez because it was irrelevant to Brown's defense. (Evid. Code, §§ 210, 350.) Brown contends that her state of mind was relevant to show she stayed out of fear of Torrez but her defense was that she was an innocent bystander. She did not testify that Torrez forced her to drive to the apartment complex or forced her to wait for him inside the garage.

Brown testified in great detail to account for her presence in the underground garage and how she was completely unaware of what Torrez intended to do that night. She was at home sleeping when Torrez woke her up and asked if she would drive him to the apartment complex so he could stay there with friends. She did not see where he went or what he did on their first trip to the apartment complex because she described how she was busy fixing the plastic covering on the broken back window of her car. She

---

[3]    Evidence Code section 210 provides in pertinent part: "'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

[4]    Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

testified that when she and Torrez returned from 7-Eleven she did not see him use the remote control gate opener to gain access to the underground garage. She did not remember where in the garage she was when Torrez got out of the car. She did not see Torrez while she was examining her car for damage and did not know where he was. She moved her car to a different parking stall in the lower level and continued to wait because Torrez asked her to do so. But, after a few minutes she got tired of waiting for Torrez and decided to leave. She was driving out when she saw Torrez walking towards her car. Torrez got into the car immediately before she was stopped by the police.

The trial court conducted an Evidence Code section 352 analysis and also correctly found that the severe prejudice of Brown's testimony that she feared Torrez, substantially outweighed any probative value. But, the balancing test was unnecessary considering the facts that were before the trial court at the time of the ruling and Brown's testimony in support of her defense theory. The proffered testimony that Brown was afraid of Torrez was properly excluded because it was irrelevant to Brown's defense.

There was insufficient evidence to support the defense of duress in this case. Brown did not testify that she wanted to leave the apartment complex and was prevented from doing so by Torrez. Brown testified that she decided to leave because she got tired of waiting for Torrez to return. She did in fact drive out of the parking stall and was leaving when Torrez approached the car. At the core of the defense of duress is "'the situation of a present and active aggressor threatening immediate danger.'" (*People v. Vieira* (2005) 35 Cal.4th 264, 290.) Brown's testimony in general does not portray Torrez as an aggressor threatening her. She had loaned him her car and he brought it back. He woke her up and *asked* her to drive him to the apartment complex. He *asked* her to wait outside for him. He *asked* her to drive him to 7-Eleven. In particular, the fact that she had begun to leave the garage presumably without Torrez, is entirely inconsistent with a defense of duress. (See *People v. Heath* (1989) 207 Cal.App.3d 892, 901–902 [the defendant's testimony that a person held a gun to the defendant's head and threatened to kill him if he did not commit burglary was evidence of duress].)

11

Finally, Brown contends that her "constitutional right to a defense trumps the rules of evidence." She relies on the statement in *People v. Reeder* (1978) 82 Cal.App.3d 543, "Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of *significant* probative value to his defense." (*Id.* at p. 553.) That opinion followed that statement with the qualification, "We do not mean to imply, however, that a defendant has a constitutional right to present all relevant evidence in his favor, no matter how limited in probative value such evidence will be so as to preclude the trial court from using Evidence Code section 352." (*Ibid.*)

We do not see that Brown made this constitutional objection in the trial court. However, "defendant may make a very narrow due process argument on appeal." (*People v. Partida* (2005) 37 Cal.4th 428, 435, discussing Evid. Code, § 352.) Brown may argue that the asserted error in excluding the evidence "had the additional legal consequence of violating due process" by depriving her of a right to present evidence. (*Ibid.*)

In *People v. Boyette* (2002) 29 Cal.4th 381, the Supreme Court stated, "'As a general matter, the "[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense." [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.]'" (*Id.* at pp. 427–428.)

In this case, our conclusion that evidence of Brown's alleged fear of Torrez was not relevant (§§ 210, 350) and that there was no error under Evidence Code section 352 ends the constitutional inquiry. Brown was allowed to present a defense and did so, both through her own testimony and cross-examination of the People's witnesses. The trial court did not completely exclude evidence of her defense. (*People v. Boyette, supra,* 29 Cal.4th at p. 428.)

## DISPOSITION

The judgments are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:



_____, P. J.

BOREN



_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.