[No. G006715. Fourth Dist., Div. Three. Feb. 28, 1989.]

In re WILLIAM S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM S., Defendant and Appellant.

**Counsel**

Fay Arfa, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Pat Zaharopoulos and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**CROSBY, J.**—Does a second entry into a burglarized home via a door unlocked during the initial visit several hours earlier constitute a separate burglary? We hold it does and that judgment may be imposed on both crimes without offending Penal Code section 654.

I

Shortly after midnight on June 5, 1987, minor William S. and a juvenile accomplice decided to burgle a home belonging to neighbors of one of their friends. The minor removed the screen from the master bedroom window, and the duo crawled into the bedroom where Larry and Sherry Benfield slept. They crept into the hallway, opened a cabinet there, and removed two locked boxes and perhaps a camera. According to the minor's accomplice, they left through the front door after unlocking it.

The pair repaired to their friend's home nearby. Within several hours the burglars returned to the Benfield residence. They entered through the door previously left unlocked and again rifled the hall cabinet. In the kitchen the scofflaws found wallets and keys. They again departed through the front door and returned to their friend's house.

According to the testimony of the friend, the pair woke him when they returned from the second trip and filled him in on the details of their evening to date. The two burglars then returned to case Benfield a third time. This time, however, as the minor walked through the front door, he was surprised by the now-awake Larry Benfield, who was perched on the living room couch in a position to observe the entry. William S. hastily retreated.

The accomplice, also a minor, later returned some of the purloined property to the Benfields. He admitted one count of burglary. Charges against the friend, an adult, were dismissed. A count based on the aborted final entry was also dismissed as to this minor. The juvenile court sustained the allegations of the remaining two burglary counts and committed William S. to the California Youth Authority for a term not to exceed seven years and four months, six years on the first count and one year, four months on the second.

## II

Utilizing four separate headings, William S. reiterates essentially the same theme: "[Penal Code] Section 654's prohibition against multiple punishment has been interpreted to apply to more than one violation of the same Penal Code section." Woven into the section 654 argument is a related query: Did the minor commit one or two burglaries? If there was but one, it would not be necessary to consider the Penal Code section 654 argument. Even if there were two, Penal Code section 654 could arguably apply because it bars multiple punishments for multiple convictions based on the same act. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 359 [228 Cal.Rptr. 509, 721 P.2d 595].)

We first consider the question of how many offenses occurred. In theft cases the Supreme Court has approved the following test: "Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts . . . if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*People* v. *Bailey* (1961) 55 Cal.2d 514, 519 [11 Cal.Rptr. 543, 360 P.2d 39].) *Bailey* was a welfare fraud prosecution in which the issue was whether the defendant committed a series of petty thefts by false pretenses or, by cumulating the small individual payments she fraudulently obtained, one felony. The court concluded the defendant had a single plan and reversed an order granting her motion for a new trial and affirmed the conviction of grand theft. Applying the *Bailey* test, the court in *People* v. *Packard* (1982) 131

Cal.App.3d 622 [182 Cal.Rptr. 576] determined a series of thefts by a movie studio production clerk of hundreds of thousands of dollars over a three-year period constituted but one grand theft, not the three found by the jury. (See also *People* v. *Gardner* (1979) 90 Cal.App.3d 42, 47 [153 Cal.Rptr. 160] [defendant may be convicted of only one theft despite shooting several hogs during a single spree]; *People* v. *Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556], disapproved on another point in *People* v. *Green* (1980) 27 Cal.3d 1, 32 [164 Cal.Rptr. 1, 609 P.2d 468] [receipt on a single occasion of multiple items of property stolen from different victims constitutes a single offense].)

■ Although thefts were involved here, to be sure, burglary is a considerably different offense. The gist of burglary is the entry into a structure with felonious intent. Technically at least, a new burglary occurs with every new entry. Rigid application of that approach could produce absurd results, however. For example, where a thief reaches into a window twice attempting, unsuccessfully, to steal the same potted geranium, he could potentially be convicted of two separate counts.

■ A more useful test for determining the separateness of alleged multiple burglaries may be developed by analogy to that employed in sex crimes where a different multiple entry question poses similar puzzling problems for judges and juries: "[W]hen there is a pause . . . sufficient to give defendant a reasonable opportunity to reflect upon his conduct, and the [action by defendant] is nevertheless renewed, a new and separate crime is committed." (*People* v. *Hammon* (1987) 191 Cal.App.3d 1084, 1099 [236 Cal.Rptr. 822].) Factors to be considered include whether the acts are "separated . . . by an appreciable passage of time, or [] by a reasonable opportunity for reflection." (*Ibid.*) It is also pertinent to consider whether the first act constituted a completed crime in the sense that it could no longer be said to be ongoing for any purpose, e.g., the felony-murder rule. In the case of burglary, the crime is considered ongoing until the perpetrator has reached a place of temporary safety with unchallenged possession of the loot. (*People* v. *Salas* (1972) 7 Cal.3d 812, 823 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832]; *People* v. *Fuller* (1978) 86 Cal.App.3d 618, 623 [150 Cal.Rptr. 515].)

■ This was not a situation where the burglars made a series of brief entries into a dwelling for the purpose of loading a getaway vehicle parked in the driveway or around the corner. Perhaps that scenario should be viewed as one continuous course of conduct and only one crime. Here, by contrast, after the initial foray, both perpetrators reached a safe haven and waited an hour or hours before returning to the victims' residence. The evidence concerning the amount of the delay was conflicting, but the hiatus was considerable by all accounts. There was plenty of time to reflect.

Moreover, these were not multiple entries in an attempt to steal a single item, as in our potted geranium example. Rather, the second entry in this case was inspired by a desire to purloin additional loot. Also, all the grave risks of violent confrontation engendered in the initial burglary were repeated in the second. In the case of the potted geranium, the second intrusion would increase that risk only slightly. Substantial evidence supports the trial court's finding of multiple burglaries.

## III

 Penal Code section 654 does not bar multiple punishment for the two crimes.[1] The Supreme Court has noted, "The fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. [Citations.]" (*People* v. *Bauer* (1969) 1 Cal.3d 368, 377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) These offenses were far more than "technically complete," however, as noted above. The Court of Appeal has observed, "[T]he question of whether the acts of which a defendant has been convicted constituted an indivisible course of conduct is primarily a factual determination, made by the trial court, on the basis of its findings concerning the defendant's intent and objective in committing the acts. [Citations.] This determination will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 74-75 [81 Cal.Rptr. 418].)

 *People* v. *See* (1980) 109 Cal.App.3d 76 [167 Cal.Rptr. 128] is instructive. There, the defendant burgling a business office noticed a safe too large to transport in his getaway vehicle. Undaunted, he left with the loot he *could* move, stole a pickup truck, and returned for the safe. See was charged with only one count of burglary and auto theft. He pleaded guilty to both and received consecutive sentences.

Claiming the vehicle theft was part of the burglary, See appealed the court's sentencing choice. A divided appellate panel disagreed with him and affirmed, noting "[t]here [were] two burglaries involved in this case, one before the truck theft and one after. Although only one burglary was charged, the judge and See recognized this as two distinct offenses and their colloquy at the time of receiving the plea bears this out." (*Id.,* at p. 80.)

William S. makes a similar pitch: Claiming the door he unlocked during the first entry evinced a single criminal intent because it was done to

---

[1] Penal Code section 654 provides, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

facilitate the second, he argues he may be sentenced for only one burglary, no matter how many times he returned to the home. We disagree. The act of unlocking the door was not an element of either burglary. These crimes were committed by means of two distinct and different entries, separated both in time and place, and with the intent to steal entirely different property. The second entry doubled the danger of violent confrontation.

Many burglars do leave doors unlocked, but we cannot subscribe to the view that they are free to return at will hours later with no additional culpability. Substantial evidence supports the trial court's finding of two completed burglaries which were not so intertwined in a continuous course of conduct to justify application of Penal Code section 654.[2]

Judgment affirmed.

Scoville, P. J., and Moore, J., concurred.

---

[2] By contrast, we suggest a scenario where section 654 *might* apply: The burglarized structure is in a desert where the owners appear only on weekends. During the course of a weekday afternoon after the original entry, one of the burglars leaves to obtain a crowbar while the other waits on the front porch. Two hours later the first burglar returns with the tool, and both reenter the premises. The second entry is sufficiently separated in time to provide a meaningful period to reflect and might be viewed as another burglary, but Penal Code section 654 should bar dual punishment.