Filed 4/29/15  P. v. Holyfield CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH HAYES HOLYFIELD,<br><br>        Defendant and Appellant. | C074672<br><br>(Super. Ct. No. 11F04348) |

Defendant Joseph Hayes Holyfield plead guilty to presenting a false insurance claim (Pen. Code, § 550, subd. (a)(1); count one),[1] presenting a false statement in support of an insurance claim (§ 550, subd. (b)(2); count two), hit and run (Veh. Code, § 20001, subd. (a); count three), driving under the influence and causing great bodily injury (Veh. Code, § 23153, subd. (a); count four), and misdemeanor making a false report to the California Highway Patrol (CHP) (§ 148.5 subd. (a); count five).  Defendant also admitted a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and

---

[1]  Undesignated statutory references are to the Penal Code.

1

three great bodily injury enhancements (Veh. Code, § 23558). The trial court sentenced defendant to the upper term of five years on count one, doubled, and a concurrent term of five years, doubled, on count two, and eight months, doubled for both counts three and four. In addition, the court imposed three four-month terms (one-third the midterm) on the three great bodily injury enhancements. Defendant appeals the concurrent sentences imposed on counts one and two, claiming the sentence violates the prohibition on multiple punishment in section 654. We affirm.

FACTUAL BACKGROUND

Responding to a call, CHP officers arrived at the scene of a major collision involving three vehicles, a Kia, Volvo, and BMW. The drivers of the Kia and Volvo remained at the scene, but the BMW had been abandoned.

Witnesses identified defendant as the driver of the BMW. The witnesses also told the officers that the BMW had run a red light and collided with the Kia, which then collided with the Volvo. Defendant walked away, looked around, and ran into a nearby tattoo parlor, which he owned. He was on his cell phone while he ran. Moments later he left the tattoo parlor and got into another car and was driven away by Manuel Francisco Sanchez, an employee of the tattoo parlor.

Officer Welsh ran the license plate number of the BMW. Christina and Joseph Holyfield were the registered owners and lived at a nearby address. Welsh went to the address as other officers secured the scene. Christina Holyfield, defendant's wife, answered the door and told Welsh she did not know where defendant was. She also told him the BMW had recently been stolen. Christina later reported the BMW stolen to the Citrus Heights Police Department. As a result of that report, three officers returned to Christina's house.

Officers asked Christina how she knew the car was stolen. Christina did not answer their questions; she just continued denying knowing where defendant was. Officers informed Christina she could be charged with a crime for filing a false report.

2

She decided not to report the car stolen at that time. Several days later, the Holyfields contacted CHP to report the BMW stolen.

CHP officers spoke to defendant the day after the accident at his home. He claimed he had not driven the BMW that day, and it must have been stolen. He also told them on the day of the accident he had been with his family at the lake and had drank eight or nine beers and his son, Joshua, drove him home. He had one of his employees, Marcos Olivias, pick him up and take him to the tattoo parlor because he was fighting with Christina. He spent most of the day there and eventually walked home around 2:30 a.m. the next morning. When he left the house, the BMW was in the garage with the keys inside.

Joshua confirmed he drove defendant home from the lake, because defendant was very intoxicated and obnoxious. Olivias denied he had picked up defendant. He told officers defendant had called him after the accident and told him to provide a false story about picking him up.

Criminal investigator Richard Gardella interviewed Christina and Tara McCulley, defendant's girlfriend. Christina stated the family had returned from the lake around 7:30 p.m. Christina indicated defendant had no fewer than 20 beers that day and was using crack cocaine. After defendant came home, he left in the BMW to meet his drug dealer. Later, Sanchez drove up to the house with defendant. Defendant told her he had totaled the BMW and she had to call the police and tell them it had been stolen. When law enforcement arrived later, defendant told Christina to not let them in and to lie to the police.

McCulley told Gardella that defendant had told her that in the summer of 2010, he had wrecked the BMW and lied to police about it. He said he was driving around 90 miles per hour when he collided with another vehicle. He then ran to the tattoo parlor because he had drugs on him. He admitted telling Christina to lie to the police and report the car as stolen. He invited McCulley to flee to St. Martin with him. McCulley

3

accompanied defendant to St. Martin until he was expelled for alcohol and drug related behavior.

On June 28, 2010, Christina called her insurance company, Anchor General Insurance (Anchor), and reported the BMW stolen. Anchor assigned Carol Luster, a special investigations unit coordinator, to investigate the claim. On July 21, 2010, the insurance company requested a copy of the police report. After the initial claim was submitted, Christina provided a notarized affidavit of theft questionnaire, reiterating the claim the BMW had been stolen. Christina contacted Anchor repeatedly in July 2010 and requested status updates on her claim. On July 28, she told Anchor defendant had not been driving the BMW.

On August 2, 2010, defendant contacted Anchor and reiterated he was not driving the vehicle at the time of the accident and had no idea who had been driving it. He also stated he had come back late from the lake, then left the home to go to his shop, and his wife had left the keys in the vehicle while it was parked in the garage. A few minutes later, defendant called Anchor and told them he could not get a stolen vehicle report from the police because the vehicle had been recovered. On August 6, defendant called seeking a status of the claim. Anchor advised defendant that the claim was being investigated because of conflicts in the statements. Anchor told him he needed to meet with an investigator and any witnesses and get a report. On August 17, defendant contacted Anchor again seeking a status of his claim. Defendant stated he was trying to "push the claim along" because he had an outstanding loan with his car note that needed to be paid. By then Anchor had received notice that the BMW had been involved in a collision and defendant was driving when the collision occurred. The insurance company then hired a private investigator.

PROCEDURAL HISTORY

Defendant was charged with and plead guilty to presenting a false insurance claim (§ 550, subd. (a)(1); count one), presenting a false statement in support of an insurance

4

claim (§ 550, subd. (b)(2); count two), hit and run (Veh. Code, § 20001, subd. (a); count three), driving under the influence and causing great bodily injury (Veh. Code, § 23153, subd. (a); count four) and misdemeanor making a false report to CHP (§ 148.5 subd. (a); count five).  Defendant also admitted a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and three great bodily injury enhancements (Veh. Code, § 23558).  The trial court sentenced defendant to the upper term of five years on count one, doubled, and a concurrent term of five years, doubled, on count two, and eight months, doubled for both counts three and four.  In addition, the court imposed three four-month terms (one-third the midterm) on the three great bodily injury enhancements.

### DISCUSSION

Defendant claims the trial court violated section 654 by imposing concurrent sentences on counts one and two.  He contends his making the false statement to support the insurance claim "was merely the means by which he presented the false insurance claim.  Both crimes were committed with a single objective – to obtain insurance benefits."  Accordingly, he contends the sentence in count two should have been stayed because it involved the same conduct as count one and was committed with a single intent and objective.

Section 654, subdivision (a) provides, in pertinent part, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 is intended "to insure that a defendant's punishment will be commensurate with his [or her] culpability."  (*People v. Perez* (1979) 23 Cal.3d 545, 552.)  The statute bars multiple punishment for both a single act that violates more than one criminal statute and multiple acts, where those acts comprise an indivisible course of conduct incident to a single criminal objective and intent.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v.*

5

*Correa* (2012) 54 Cal.4th 331, 334, 338.)  Conversely, where a defendant commits multiple criminal offenses during a single course of conduct, he or she may be separately punished for each offense that he or she committed pursuant to a separate intent and objective.  (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639.)  Multiple criminal objectives may "be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts.  The rule does not apply where . . . the multiple convictions at issue were indisputably based upon a single act."  (*People v. Mesa* (2012) 54 Cal.4th 191, 199.)  Whether multiple convictions were part of an indivisible transaction is primarily a question of fact for the trial court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.)  Moreover, the purpose of section 654 is to ensure a defendant's punishment is commensurate with his culpability.  (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)  Thus, "where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective.  (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)  If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed.  (*In re William S*. (1989) 208 Cal.App.3d 313, 317.)"  (*People v. Louie* (2012) 203 Cal.App.4th 388, 399 (*Louie*).)  We review a challenge under section 654 for substantial evidence to support the trial court's determination.  (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.)

Here, the Holyfields submitted their false insurance claim on June 28, 2010.  Over a month later, on August 2, defendant told Anchor he was not driving the vehicle at the time of the accident and had no idea who had been driving it.  He also claimed he had come back late from the lake, left the home to go to his shop and his wife had left the keys in the vehicle while it was parked in the garage.  A few minutes later, defendant called Anchor back and told them he could not get a stolen vehicle report from the police because the vehicle had been recovered.  Approximately two weeks later, defendant

6

contacted Anchor again seeking a status of his claim. He was trying to "push the claim along" because he had an outstanding loan with his car note that he needed to pay.

A separation in time as little as 15 minutes can afford "defendants the time to reconsider and reflect upon their actions, and to renew their intent . . . ." (*Louie, supra*, 203 Cal.App.4th at p. 399.) Here, defendant's insurance claim and separate statements were made weeks apart. These are significant separations in time, which provided the defendant ample opportunity to reflect and renew his intent. Since defendant's course of conduct consisting of separate criminal acts was separated in time by an interval sufficient to allow him to reflect and renew his intent, the court properly sentenced defendant for the crimes of presenting a false insurance claim and presenting a false statement in support of an insurance claim. (*Ibid.*)

DISPOSITION

The judgment is affirmed.


                                             \_\_\_\_BLEASE_____, Acting P. J.


We concur:


     \_\_\_\_HULL_____, J.


     \_\_\_\_MAURO_____, J.