Filed 3/9/16  In re K.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.R., a Person Coming Under the Juvenile Court Law. | B265588 (Los Angeles County Super. Ct. No. MJ22978) |
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff and Respondent, v. K.R., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy S. Pogue, Commissioner.  Affirmed.

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

Minor K.R. (appellant) appeals from the juvenile court's order sustaining a petition filed on January 2, 2015, pursuant to Welfare and Institutions Code section 602, alleging that appellant committed both first degree burglary (Pen. Code, § 459)[1] (count 1) and second degree burglary (§ 459) (count 2). The petition further alleged that during the residential burglary (count 1), a person other than an accomplice was present at the residence causing the offense to be a violent felony within the meaning of section 667.5, subdivision (c).

The juvenile court also sustained a second Welfare and Institutions Code section 602 petition, filed on January 5, 2015, after appellant admitted one felony count of threatening a public officer (§ 71), and a misdemeanor count of battery on a school employee (§ 243.6). Based on both petitions the juvenile court declared appellant to be a ward of the court, placed him in a camp community placement program for five to seven months, and set a maximum term of confinement at seven years eight months.

Appellant contends there was insufficient evidence to establish the second degree burglary offense and that the sentence imposed for that offense should have been stayed pursuant to section 654. Since substantial evidence supports the order sustaining the second degree burglary offense and the juvenile court's imposition of sentence for that offense, we affirm the orders.

## BACKGROUND

At approximately 1:00 pm. on December 30, 2014, Albert Frye was home, listening to music when he heard a rumbling or rattling sound next to the house and felt the nearby wall vibrate. He went downstairs to the attached garage to investigate. The access between Frye's home and the garage was through a laundry room door. Another door in the garage opened into Frye's sideyard. Frye opened the side yard door and did not see anything amiss. He then entered the sideyard and walked to the corner of the house. He poked his head around the corner and looked into the backyard where he saw two black males walking away from him toward a storage shed located approximately 40

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

feet from the house. One of the males had a backpack and was wearing a dark colored cap. Frye went back inside the garage, locked the garage door, and entered the house to call 911. Frye looked through a window facing the backyard and saw the two males walking back toward the garage door. He then heard a "loud bang." Frye returned to the garage and was examining the door when he heard a second "bang" and the door "popped open." Frye yelled, "Hey you guys, get out of here," and the two males ran away.

Frye saw the wood doorjamb surrounding the garage door had splintered, and needed to be replaced. He also found a shovel and sledgehammer that had been in the storage shed outside the garage door. The doors to the storage shed were open, although Frye did not remember leaving them open when he last entered the shed several days earlier.

Tara Wilson, who lived across the street from Frye, was on her front porch when she heard dogs barking from the direction of Frye's home. She looked in that direction and saw two black males jump from Frye's backyard over the fence surrounding Frye's property. One of the two was lanky and slightly taller than the other and was wearing black pants and a black hoodie with the hood pulled up. The other was stocky and wearing a white beanie or cap and a dark hoodie with the hood down. Wilson later identified appellant as the stockier of the two who had been wearing the white cap. Wilson yelled from the front yard that she was going to call 911. The two males turned to look at her and then ran in opposite directions. While Wilson was speaking to a 911 dispatcher, a patrol car arrived. Wilson gave a description of the suspects to the deputy sheriff in the patrol car. Five to ten minutes later another deputy arrived at Wilson's home and asked her to identify a suspect in custody.

Wilson was then taken by a patrol car to a nearby location. She remained in the patrol car while appellant stood approximately 10 to 15 feet away. Wilson identified appellant as one of the two males she saw at Frye's property. One of the deputies showed Wilson a white hat they had retrieved while pursuing appellant. Wilson noticed that appellant's hair was flattened as though he had been wearing a hat.

3

Los Angeles County Deputy Sheriff Anderson was on patrol with another deputy on December 30, 2014, when he received a radio call about a burglary. At the location a witness described two suspects and the directions in which they had fled. The deputies drove on Noll Drive where they saw appellant who matched the description of the one of the suspects. They detained appellant, who was wearing dark clothing and a white baseball cap.

Deputy Reader advised appellant of his *Miranda*[2] rights, which appellant acknowledged understanding. Appellant then told Deputy Reader that he had met a friend who asked him to serve as a lookout while the friend attempted to break into a house. Appellant said he and the friend entered the victim's backyard and obtained a shovel which they used to break open the garage door. As the door broke open, someone yelled, "what are you doing?" Appellant and his friend then fled the scene, running in opposite directions until appellant was apprehended.

In court, appellant testified that on December 30, 2014, at 9:00 a.m., he went to the home of his producer, a 17-year-old named Dillon, to work on a song. After working for three hours appellant went to the Taco Bell at 20th and S Streets for lunch. While walking back to Dillon's from Taco Bell, appellant was detained by deputies. At the time appellant was wearing a red and blue Clipper's jersey, a turtleneck, gray sweats, and a red and white hat with red lettering. Appellant denied being involved in an attempted burglary and denied making a statement about serving as a lookout for a burglary.

At the conclusion of the hearing the juvenile court found that Wilson was a credible witness and that appellant was not credible. The court then found beyond a reasonable doubt that the prosecution had met its burden of proving both the first and second degree burglary counts alleged in the petition.

---

[2]     See *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445.

The juvenile court set appellant's maximum term of physical confinement at seven years eight months. Six years of that term were attributable to the first degree burglary finding, and eight months were attributable to the second degree burglary finding.[3]

## DISCUSSION

### I. Standard of review

Appellant challenges the sufficiency of the evidence supporting the juvenile court's finding that he committed second degree burglary. "'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Bolden* (2002) 29 Cal.4th 515, 553, quoting *People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) The appellate court reviews the entire record in the light most favorable to the prosecution and presumes in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence to determine whether the record discloses substantial evidence. (*People v. Lewis* (1990) 50 Cal.3d 262, 277; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.) The same standard of review applies when assessing the sufficiency of the evidence in a juvenile proceeding. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809.)

Appellant also challenges the sentence imposed by the juvenile court for the second degree burglary finding. He contends that sentence should have been stayed under section 654. "Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

---

[3] One year was attributable to the offenses to which appellant admitted in the January 5, 2015 petition -- eight months for threatening a public officer (§ 71), and four months for battery on a school employee (§ 243.6).

## II. Sufficiency of the evidence to support the second degree burglary finding

The elements of second degree burglary are (1) entry into a building (2) with the intent to commit larceny or any felony. (§ 459; *People v. Sparks* (2002) 28 Cal.4th 71, 78-81.) Appellant contends there was insufficient evidence that he or his companion entered the victim's storage shed and removed the shovel and sledgehammer.

There is substantial evidence that appellant or his companion entered the storage shed and removed the tools used to break open the garage door. Frye testified that he saw two black males walking toward the shed. Although he did not see them enter the shed, Frye testified that it "was pretty much obvious" that they had done so. Immediately after the incident, Frye found a sledgehammer and shovel in the sideyard outside the garage door. The shovel and sledgehammer belonged to Frye and were normally kept in the storage shed. The doors to the shed were open, although Frye did not remember leaving them open when he last entered the shed. Appellant told Deputy Reader that he and his companion obtained a shovel from the victim's backyard and used it to break open the garage door. Based on this evidence, the juvenile court could have reasonably inferred that the tools had been in the storage shed until appellant or his companion entered the shed and removed them in order to break into Frye's garage. Substantial evidence supports the second degree burglary finding.

## III. Whether appellant's sentence should have been stayed pursuant to section 654

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 precludes multiple punishments for a single act or for a course of conduct comprising indivisible acts. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) As articulated by our Supreme Court in *Neal v. State of California* (1960) 55 Cal.2d 11, the test for determining "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654, depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the

6

defendant may be punished for any one of such offenses but not for more than one." (*Id.* at p. 19.)

Since the Supreme Court's decision in *Neal*, courts have "refined and limited application of the 'one intent and objective' test, in part because of concerns that the test often defeats its own purpose because it does not necessarily ensure that a defendant's punishment will be commensurate with his culpability. [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253 (*Kwok*).) For example, in *People v. Beamon* (1973) 8 Cal.3d 625, disapproved on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896, the Supreme Court explained "that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" (*Beamon*, at p. 639, fn. 11.) "Thus, a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654." (*Kwok, supra*, at p. 1253.)

The court in *Kwok* applied a "useful test for determining the separateness of alleged multiple burglaries for purposes of section 654." (*Kwok, supra*, 63 Cal.App.4th at p. 1255.) That test involved determining (1) "whether the defendant had the opportunity to reflect after the first entry, and nevertheless entered the premises again" and (2) whether "each successive offense created a new risk of harm." (*Id.* at pp. 1254-1255.)

The court in *Kwok* derived this test in part from *In re William S.* (1989) 208 Cal.App.3d 313, a case in which the defendant entered a home, took several items of property, and departed through the front door, which he left unlocked. He returned several hours later, entered through the unlocked door, and took several more items. (*Id.* at pp. 315-316.) The defendant argued that he could be sentenced for only one burglary, because the first entry was done to facilitate the second, evidencing a single criminal intent. (*Id.* at pp. 318-319.) The court in *William S.* rejected that argument, concluding that there had been "two distinct and different entries, separated both in time and place." (*Id.* at p. 319.) The court noted that a "useful test for determining the separateness of alleged multiple burglaries may be developed by analogy to that employed in sex

7

crimes." (*Id.* at p. 317.) In such cases, "[f]actors to be considered include whether the acts are 'separated . . . by an appreciable passage of time, or [] by a reasonable opportunity for reflection.' [Citation.]" (*Ibid.*) The court in *William S.* noted that the hiatus between the defendant's entries allowed him "plenty of time to reflect." (*Ibid.*) The court further noted that "the grave risks of violent confrontation engendered in the initial burglary were repeated in the second," and that "[t]he second entry doubled the danger of violent confrontation." (*Id.* at pp. 318-319.)

Similar factual circumstances were present in *Kwok*. The defendant in that case entered the victim's home on two separate occasions, nine days apart. During the first entry, he removed a lock mechanism, took it to a locksmith who made a key that he retained. He then returned the lock and used the key for a subsequent entry during which he assaulted the victim. (*Kwok, supra*, 63 Cal.App.4th at p. 1240.) The court in *Kwok* held that section 654 did not preclude separate sentences for the two burglaries because the facts demonstrated a "'course of conduct divisible in time,' consisting of separate offenses which may therefore be separately punished. [Citations.]" (*Id.* at p. 1256.) The court further concluded that each of the defendant's entries into the house "created a separate and distinct risk of violent confrontation" that could be separately punished, noting that "[l]aws against burglary are primarily designed not to deter trespass or the supporting theft or felony intended by the burglar, but rather "'. . . to forestall the germination of a situation dangerous to personal safety.'" [Citations.]" (*Ibid.*)

Applying these principles to the instant case, the evidence supports a finding that appellant's course of conduct was divisible in time and place, that appellant had the opportunity to reflect between offenses, and that each offense created a new risk of harm. Frye testified that approximately one minute after hearing a disturbance in his sideyard, he went to investigate the source of the disturbance. When he entered the garage and saw that nothing was disturbed, he opened the garage door leading to the sideyard. Frye entered the sideyard, saw nothing amiss, and walked to the corner of the house. From there, he saw two males walking in the backyard toward the storage shed, approximately 40 feet away. Appellant and his companion obtained a sledgehammer and shovel from

the storage shed before walking back to the garage door to force a second entry. The entries into the storage shed and the garage were "two distinct and different entries, separated both in time and place." (*In re William S., supra*, 208 Cal.App.3d at p. 319.) Appellant had the opportunity to reconsider his course of conduct during the interval between entering the storage shed and walking the 40 foot distance back to the garage door. Although the time separating the two offenses may have been short, that fact alone does not preclude a trier of fact from inferring that appellant had the opportunity to reflect. (See *People v. Trotter* (1992) 7 Cal.App.4th 363, 365-366 [one-minute lapse between gunshots sufficient to support consecutive sentences for assault].)

Significantly, the entry into the storage shed "created a separate and distinct risk of violent confrontation" with the victim. (*People v. Kwok, supra*, 63 Cal.App.4th at p. 1256.) While appellant and his companion were walking to the storage shed, Frye's investigation led him outside the home and into the sideyard. Although the intruders did not see Frye, and Frye did not confront them, the risk of such a confrontation existed. When appellant and his companion returned from the storage shed, they had in their possession a shovel and a sledgehammer, further increasing the risk of harm.

The further risk of harm engendered by entry into the storage shed distinguishes the instant case from *People v. Goode* (2015) 243 Cal.App.4th 484, in which the court held that section 654 barred separate sentences for a burglary and attempted burglary by a defendant who attempted to open a residence window a few seconds after opening a storm door fronting the same residence. After concluding that "the lapse of a few seconds between the two acts was not sufficient to make defendant's course of conduct divisible in time, such that he could be punished separately for each act," the court in *Goode* noted that an equally relevant factor to be considered was "whether each offense created a new risk of harm." (*Goode*, at p. 493.) The court noted that there was no "evidence suggesting that defendant's attempt to open a window a few seconds after he tried to open the front door created a new risk of a dangerous confrontation between him and the occupants of the house. So far as can be determined from the evidence presented, the window defendant tried to open was in the same room as the front door, and [the

victim] was the only occupant of that room at the time.  The risk that a situation dangerous to public safety would germinate was no greater as a result of defendant's attempt to enter that room by way of the window than it was a few seconds earlier as a result of defendant's attempt to enter the room through the front door.  Under these circumstances, we conclude section 654 precluded the imposition of punishment for the attempted burglary at the window separate from the punishment for the burglary at the front door." (*Goode*, at p. 494.)

In the instant case, by contrast, appellant's entry into the storage shed created separate and additional risks of a dangerous confrontation with Frye -- a near encounter while appellant and his companion were walking toward the storage shed, and the risk of another encounter after they obtained possession of heavy garden tools.  Substantial evidence accordingly supports the trial court's determination that section 654 did not preclude the imposition of separate punishment for the second degree burglary offense.

### DISPOSITION

The judgment of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
       CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

10