Filed 12/22/23  P. v. Haro CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>IVAN HARO,<br><br>Defendant and Appellant. | B328638<br><br>(Los Angeles County<br>Super. Ct. No. SA106587) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein, Judge.  Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

While out walking their dog, Harold H.[1] and his young son encountered defendant Ivan Haro. Haro was muttering incoherently, called Harold and his son "demons," and then brutally attacked Harold with a heavy-duty rake and later with hedge clippers.

At trial, Haro claimed he acted in self-defense because Harold had first brandished a knife. To demonstrate Haro was not acting in self-defense, the prosecutor asked Haro whether, when the police arrived and Haro was no longer in alleged danger, Haro refused to surrender and instead stood on top of a truck telling the police, "I'll fucking obliterate you," and "You're so fucking weak, and I'm going to obliterate you, fool. If you ever fuck with me and my fucking people again, that is the truth, fool, because you are so disobedient." Haro did not deny doing so. The jury rejected Haro's self-defense claim and convicted him of two counts of assault with a deadly weapon—one based upon his use of the metal rake and the other based upon his later use of the hedge clippers—along with other crimes.

On appeal, Haro argues the trial court erred in admitting evidence of Haro's standoff with the police and his profane statements that he would "obliterate" them because, under Evidence Code section 352, such evidence was more prejudicial than probative. He further argues we should strike one of the

---

[1] Because he is a victim in a criminal proceeding, we use Harold's first name and last initial. (Cal. Rules of Court, rule 8.90(b)(4).)

two assault convictions pursuant to Penal Code[2] section 954 because his attack constituted one continuing assault.

We conclude Haro forfeited his evidentiary argument because he failed to object on the basis of Evidence Code section 352 or otherwise request the trial court balance the prejudicial effect of the evidence against its admitted probative value. We further conclude substantial evidence supported that Haro completed two crimes of assault and, thus, section 954 does not require that we strike one of the assault convictions. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Information**

An information filed July 20, 2022, alleged Haro committed an assault with a deadly weapon, "to wit, a metal rake" (§ 245, subd. (a)(1); count 1), another assault with deadly weapon, "to wit, hedge clippers" (§ 245, subd. (a)(1); count 2), criminal threats (§ 422, subd. (a); count 3), and second degree robbery (§ 211; count 4). The information further alleged Haro had a prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)) and several factors in aggravation (Cal. Rules of Court, rule 4.421(b)).

**B.      The Prosecution's Trial Evidence**

On May 31, 2022, at about 8:00 p.m., Harold and his six-year-old son were walking their dog in their neighborhood when they encountered Haro. Harold had no weapon with him. Haro appeared disheveled, was swinging a metal chain, and told Harold's son, "Run before you die." Harold put his son behind

_____

[2] Further unspecified statutory references are to the Penal Code.

him and attempted "to defuse the situation." Haro "went into . . . [a] maniacal state," at times muttering incoherently, called Harold and his son "demons," and said, "You white motherfucker," "I'm going to fucking kill you." Harold told his son to run away, which his son did.

Harold retreated, but Haro followed him. Haro said he was going to follow Harold home and kill Harold, his family, and his dog. Harold called 911 as he walked backwards from Haro. Haro retrieved a heavy-duty rake from a gardener's truck and began chasing Harold. Harold fell at least twice while trying to evade Haro, and Haro hit him multiple times on the back and forearms with the rake. Haro also knocked Harold's phone out of his hand and kept it, putting it in Haro's own pocket.

While hitting Harold with the rake, Haro partially broke its wooden handle. Haro then fully broke the handle across his knee and stabbed Harold in the back with it. Haro grabbed another flimsier rake out of another truck and continued to give chase. Haro hit Harold with the flimsier rake, which did not "do much," and Haro dropped the flimsier rake.

Harold ran to a neighbor standing outside, who closed his front door and refused to help. In the meantime, Haro took hedge clippers from a gardener's truck. He opened and closed the clippers and told Harold, "I'm going to fucking kill you and cut your dick off." Harold, feeling he had "to fight for [his] life," retrieved a shovel from a gardener's truck and used it to "duel" Haro. The shovel broke Haro's clippers, which fell to the ground. Haro picked up both blades and resumed pursuit. Haro threw one of the blades at Harold, which cut Harold's hand, causing him to drop the shovel. Haro also stabbed Harold in his back and

torso with the clippers. Haro then picked up the shovel and hit Harold multiple times with it.

Harold's next-door neighbor observed Haro chuckling and muttering as he chased and hit Harold, and Harold screaming for help. Unlike the prior neighbor, this individual intervened and got Harold to safety inside the neighbor's house. As a result of the attack, Harold had lacerations "all over" his body, and his hands were "severely damaged."

## C. Haro's Trial Evidence

The defense argued Haro attacked Harold in self-defense.

Haro testified that he grew up on the same street where the attack occurred and that his godfather still lived there as of May 31, 2022. On that day, Haro was walking down the street, swinging a small chain. Harold, who was walking in the opposite direction, pulled out a knife. Haro got scared and retrieved a rake to defend himself. He swung the rake to get Harold to "back off," but Harold "charg[ed]" at Haro. Haro hit Harold on his arm with the rake and was able to knock the knife out of Harold's hand. Haro also testified he "said some things that were mean" because he was "mad that somebody had the nerve to pull a knife on [him]."

Haro picked up Harold's phone because he thought it was his. After Harold retrieved a shovel, he and Haro continued to fight. Haro picked up gardening shears to scare Harold and get him to back off, but Harold "just kept wanting to fight."

On cross-examination, Haro testified that he walked towards a park to get away from Harold. When asked whether he had a 40-minute standoff with police once they arrived, Haro responded, "I don't know if it was 40 minutes or what." The prosecutor asked, "During that standoff, you stood up on cars in

the parking lot[,] correct?" Defense counsel objected on the basis of relevance. After the court asked for an offer of proof at sidebar, the prosecutor explained that Haro had "testified that he was in fear for his safety and he was running away from [Harold]. I think it's relevant as to his behavior when help comes as to what he does." The trial court stated, " I think it's relevant." Defense counsel argued, "I think at a certain point it becomes improper character evidence to show there were threats in conformity with the threats that were previously alleged." The court responded, "I don't think that's what [the prosecutor is] asking about now." The trial court refused defense counsel's request for a "continuing objection" and told counsel, "You can make an objection to each question if you think something is irrelevant."

Following the sidebar, Haro testified he got onto a truck. He acknowledged that he had been angry, and said, "I'll fucking obliterate you. I'll obliterate you." He did not deny that he also said, "You're so fucking weak, and I'm going to obliterate you, fool. If you ever fuck with me and my fucking people again, that is the truth, fool, because you are so disobedient." Haro testified he "was just saying that," and that it was not directed to the police.

## D. Closing Arguments

During closing argument, the prosecutor explained to the jury that there were two charges for assault with a deadly weapon because Haro used two weapons—the rake and the hedge clippers—and there had been a break between Haro's use of these weapons at the time Harold had unsuccessfully pleaded with a neighbor for help. The prosecutor did not mention Haro's standoff or statements to the police during closing argument.

6

Defense counsel argued Haro acted in self-defense.  Like the prosecutor, defense counsel did not mention Haro's standoff or statements to the police during closing argument.

**E.    Verdict and Sentencing**

The jury convicted Haro of both counts of assault with a deadly weapon (counts 1 and 2) and criminal threats (count 3).  The jury acquitted Haro of second degree robbery (count 4) but found him guilty of the lesser included charge of petty theft (§ 484, subd. (a)).

In a bifurcated proceeding, the trial court found true the allegation that Haro had one prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)).  It also found true three factors in aggravation, including that Haro engaged in violent conduct that indicated a serious danger to society, that Haro's prior convictions as an adult and sustained petitions in juvenile proceedings were numerous or of increasing seriousness, and that Haro served a prior prison or jail term under section 1170, subdivision (h).  (Cal. Rules of Court, rule 4.421(b).)  The trial court sentenced Haro to state prison for eight years (the upper term of four years, doubled due to the prior strike) on count 1.  The court stayed the sentences on counts 2 and 3 pursuant to section 654 and ran the sentence on count 4 concurrently.  With respect to the second assault, the court found "there was only one intent, an intent to assault.  However, he used different weapons.  It was charged differently.  But there was only a single intent, and that's why . . . section 654 is . . . appropriate."

## DISCUSSION

### A.  The Admission of Evidence Concerning Haro's Interaction with the Police Does Not Merit Reversal

Haro argues the trial court erred in admitting evidence of his standoff with police and the statements made during that standoff.  He contends this evidence should have been excluded under Evidence Code section 352 because the prejudice from that evidence outweighed its probative value.  The Attorney General argues Haro forfeited this argument by failing to raise this objection at trial.

We may not reverse a judgment based on an alleged error in admitting evidence unless " 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 130, quoting Evid. Code, § 353, subd. (a).)  Haro acknowledges he did not make a specific Evidence Code section 352 objection, but contends he preserved the argument because his counsel objected to the evidence based on relevance and as improper character evidence, "which encompassed the issue of balancing prejudice versus relevance pursuant to Evidence Code[ ] section 352."

We do not agree.  Haro's objections based on relevancy or improper character evidence did not alert the court that it should conduct an Evidence Code section 352 balancing.  (See *People v. Valdez, supra*, 55 Cal.4th at p. 138 [objections based on relevance or foundation "were insufficient to preserve for appeal the claim that the trial court should have excluded the evidence under [Evid. Code, §] 352"]; *People v. Barnett* (1998) 17 Cal.4th 1044, 1130 [relevancy objection did not preserve for review claim under

8

Evid. Code, § 352].)  Accordingly, Haro has forfeited his Evidence Code section 352 argument.

We likewise reject Haro's assertion that we should excuse the failure to object because any such objection would have been futile.  In admitting the testimony, the trial court found only that the evidence was relevant.  An Evidence Code section 352 objection, if made, would have then required the court to weigh that relevancy against any undue prejudice.  (See *People v. Valdez*, *supra*, 55 Cal.4th at p. 138.)  While the court did not permit defense counsel to have a continuing relevancy objection, it invited counsel to make an objection each time she believed it was proper to do so.  No further objection was made.

Even if we were to excuse this forfeiture, Haro has not demonstrated that Evidence Code section 352 barred evidence of his actions once police arrived.  That section permits the exclusion of "evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice."  (Evid. Code, § 352.)  Haro does not deny evidence of his interaction with the police immediately after he assaulted Harold had probative value but claims its admission created substantial danger of undue prejudice because the evidence was inflammatory and constituted improper character or propensity evidence under Evidence Code section 1101.

This claim is meritless.  Haro's testimony on cross-examination that he stood on a car for 40 minutes and told police that he would obliterate them was not marginally relevant but material to disproving his claim of self-defense.  A victim of an attack ordinarily would not act in such a manner once the authorities arrived and the danger from the alleged aggressor

9

had ceased.  (Cf. *People v. Garcia* (2008) 168 Cal.App.4th 261, 283 ["Evidence of a defendant's resistance to arrest, like evidence of flight, is admissible as evidence of the defendant's consciousness of guilt"].)  Nor did Evidence Code section 1101 prohibit admission of this evidence.  Subdivision (b) of Evidence Code section 1101 permits the admission of evidence of wrongdoing when it is "relevant to prove some fact . . . other than [the defendant's] disposition to commit such an act."  As just noted, the evidence at issue was relevant to impeach Haro's claim of self-defense.

Of course, relevant evidence may still be excluded under Evidence Code section 352 "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice."  (*Ibid*.; see also *People v. Hendrix* (2013) 214 Cal.App.4th 216, 246 [evidence relevant under Evid. Code, § 1101, subd. (b) still subject to Evid. Code, § 352 balancing].)  But the testimony of Haro's interaction with the police was not inflammatory or unduly prejudicial.  Taken in context, it was relatively benign compared to Haro's threats to maim and kill Harold and Haro's vicious follow-through on those threats.  Evidence about Haro's attack on Harold consumed the majority of the time at trial.  The questions concerning Haro's stand-off with the police were few and brief and targeted at Haro's claim of self-defense.  Thus, if Haro had objected, Evidence Code section 352 did not require exclusion of this evidence.

## B.    The Jury Properly Convicted Haro of Two Counts of Assault with a Deadly Weapon

Citing section 954, Haro claims the jury could convict him of only one assault count.  He did not make this argument to the trial court, and generally "only those claims properly raised and

10

preserved by the parties are reviewable on appeal." (*People v. Hester* (2000) 22 Cal.4th 290, 295.) However, Haro frames this argument as one of insufficient evidence, an argument not subject to forfeiture. (See *People v. Rodriguez* (1998) 17 Cal.4th 253, 262 [the defendant forfeits a sufficiency-of-evidence argument only by failing to file a timely notice of appeal].) We therefore consider it.

1. *Legal Principles and Standard of Review*

"Section 954 . . . concerns the propriety of multiple convictions, not multiple punishments, which are governed by section 654." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537.) Section 954 provides in part that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . under separate counts" and "the defendant may be convicted of any number of the offenses charged." Thus, our Supreme Court has held that " 'the same act can support multiple charges and multiple convictions.' " (*People v. Aguayo* (2022) 13 Cal.5th 974, 979, quoting *People v. Gonzalez, supra*, at p. 537; see *People v. Benavides* (2005) 35 Cal.4th 69, 97 ["Unless one offense is necessarily included in the other [citation], multiple convictions can be based upon a single criminal act or an indivisible course of criminal conduct (§ 954)"].)

The propriety of multiple convictions pursuant to the same statute depends on whether each conviction reflects a completed criminal act, as determined by the statutory elements of that crime. (See *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1519 [affirming multiple convictions for attempts to dissuade a witness pursuant to § 136.1]; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474 [affirming multiple convictions for corporal injury upon a cohabitant pursuant to § 273.5].) Multiple convictions

11

may be proper "even if the crimes are part of the same impulse, intention or plan." (*People v. Kirvin*, *supra*, at p. 1518; see *People v. Kopp* (2019) 38 Cal.App.5th 47, 62 ["Under section 954, a separate conviction is permissible for each completed charged offense, even if the defendant had the same intent and objective in committing multiple crimes and even if the defendant committed the crimes at or near the same time"], review granted Nov. 13, 2019, S257844.)

Although prior California courts prohibited multiple convictions for a series of related crimes unless they were separated by " 'a pause . . . sufficient to give [the] defendant a reasonable opportunity to reflect upon his conduct' " (*In re William S.* (1989) 208 Cal.App.3d 313, 317), the Supreme Court rejected this view in *People v. Harrison* (1989) 48 Cal.3d 321. There, the defendant claimed his three digital penetrations of the same victim (each lasting a few seconds) during a continuous sexual assault of approximately seven to 10 minutes constituted a single offense. The court disagreed; it explained that given the history and language of the applicable statute (§ 289), the defendant completed a new and separate offense with each new and separate penetration, "however slight." (*People v. Harrison*, *supra*, at pp. 326, 329.) Following *Harrison*, courts have found the relevant analysis to be "dictated solely by the statutory language and the temporal threshold for establishing guilt, i.e., when the offense is complete for purposes of prosecution." (*People v. Washington* (1996) 50 Cal.App.4th 568, 578.) Courts have not limited *Harrison*'s analysis to sexual offenses. (See, e.g., *People v. Ashbey* (2020) 48 Cal.App.5th 373, 383 [arson]; *People v. Johnson*, *supra*, 150 Cal.App.4th at pp. 1473-1474 [corporal

injury upon a cohabitant]; *People v. Washington*, *supra*, at p. 578 [burglary].)

"The issue of whether multiple convictions are proper is . . . reviewed de novo, as it turns on the interpretation of section 954." (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.) As usual, however, we review a challenge to the sufficiency of the evidence supporting each conviction for substantial evidence. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 671.)

2. *Analysis*

Section 245, subdivision (a)(1), criminalizes "an assault upon the person of another with a deadly weapon or instrument other than a firearm." "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "Where the assault is committed with a deadly weapon, or with force likely to produce great bodily injury, the . . . assault is complete upon the attempted use of the force." (*People v. Yeats* (1977) 66 Cal.App.3d 874, 878; see *People v. Chance* (2008) 44 Cal.4th 1164, 1170 [" 'An assault occurs whenever " '[t]he next movement would, at least to all appearance, complete the battery.' " [Citation.]' " (Italics omitted.)]; *People v. White* (2015) 241 Cal.App.4th 881, 885 ["The trier of fact may look to the completed battery to determine whether the defendant committed an assault or assault with a deadly weapon"].) An assault is complete even if it does not result in actual injury to the victim. (See *People v. Chance*, *supra*, at p. 1174.)

Here, substantial evidence supports two convictions for assault. First, there was substantial evidence that Haro committed a completed assault with the first rake. Haro struck Harold with the rake several times and stabbed him with the

13

broken rake handle, thus committing a battery. (See *People v. White*, *supra*, 241 Cal.App.4th at p. 885.) There was then a pause as Haro abandoned a second and flimsier rake and Harold unsuccessfully pleaded with a neighbor for help. Although an interlude between the two assaults may not be necessary to conclude multiple convictions are proper (see *People v. Harrison*, *supra*, 48 Cal.3d at p. 334), the fact one occurred here helps emphasize the separateness of the two assaults.

There was also substantial evidence that a second assault was completed when, after the break in the attack, Haro grabbed the hedge clippers and again pursued Harold. Haro opened and closed the clippers while threatening to kill and maim Harold. Haro also threw one of the blades at Harold, cutting Harold's hand and again committing a battery.

Citing *People v. Vidana* (2016) 1 Cal.5th 632 and *Aguayo*, Haro argues section 954 " 'does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana*, *supra*, at p. 650.) However, *Vidana* and *Aguayo* are inapposite as they both concerned " ' "dual convictions for the same offense based on alternate legal theories." ' " (*People v. Aguayo*, *supra*, 13 Cal.5th at p. 982; see *People v. Vidana*, *supra*, at p. 650.) Specifically, in *Vidana*, the Supreme Court held a defendant could not be convicted of both larceny (§ 484, subd. (a)) and embezzlement (§ 503) for the same conduct of skimming cash because those statutes defined the same offense. (*People v. Vidana*, *supra*, at pp. 649, 650.) In *Aguayo*, the Supreme Court concluded a defendant could not be convicted of both assault with a deadly weapon (§ 245, subd. (a)(1)) and assault upon the person of another by any means of force likely to produce great bodily

14

injury (§ 245, subd. (a)(4)) based upon the same conduct. (*People v. Aguayo*, *supra*, at pp. 979, 981.) The court held the Legislature intended both of these assault provisions to be different statements of the same offense. (*Id.* at p. 988.)

In *Aguayo*, the Supreme Court separately held the Court of Appeal erred in affirming the two assault convictions on the basis that the defendant hit the victim with two weapons: a bike lock and chain as well as a ceramic pot. (*People v. Aguayo*, *supra*, 13 Cal.5th at p. 981.) The Supreme Court observed that the jury did not make separate findings of fact with respect to each weapon because they were not "asked to do so by way of the prosecution's argument, a unanimity instruction, or the like." (*Id.* at p. 994.) The charging allegations and verdict form did not specify the act of force necessary to support a section 245, subdivision (a)(4) count. (*People v. Aguayo*, *supra*, at p. 994.) Nor did the jury instructions identify which act supported each count. (*Ibid.*) *Aguayo* concluded "there is a reasonable probability that the jury viewed the two charged assault offenses as based on the same act or course of conduct. Thus, the Court of Appeal erred by determining for itself that defendant's 'convictions are based on multiple acts—hitting [the victim] with the bicycle chain and lock, and hitting him with the ceramic pot.' " (*Id.* at p. 996.) The Supreme Court also declined the Attorney General's invitation to determine whether the record supported two separate acts because, "It is axiomatic that criminal defendants are constitutionally entitled to ' "a jury determination that [they are] guilty of every element of the crime with which [they are] charged, beyond a reasonable doubt." ' [Citation.]" (*Id.* at p. 995.)

Haro's case does not suffer from the same deficiencies. The information, jury instructions, and verdict forms each listed two

separate counts, the first of which expressly referred to the rake and the second of which expressly referred to the hedge clippers. During closing argument, the prosecutor explained there were two charges for assault with a deadly weapon because Haro used two weapons and there had been a pause between Haro's use of these weapons. Further, the trial court instructed the jury, "If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only . . . ." The jury filled in both assault verdict forms, indicting it found the prosecution proved, beyond a reasonable doubt, each element necessary to convict Haro of assault using the rake and a separate assault in using the hedge clippers. Because the record lacks any basis upon which to conclude that the jury here conflated Haro's attacks with the rake and hedge clippers in returning guilty verdicts thereupon, *Aguayo* does not compel reversal of one of the two assault convictions.

Haro also relies on several other inapposite cases to assert one of his assault convictions cannot stand because he engaged in one continuing assault despite using different weapons. Haro cites *People v. Wong* (2018) 27 Cal.App.5th 972, which held that section 654 prohibits the imposition of three consecutive one-year enhancements for the use of deadly weapons (two pairs of scissors and a knife) to a single count for attempted murder. (*People v. Wong, supra,* at p. 978.) *Wong* does not aid Haro because his appeal does not concern the imposition of multiple punishments or section 654. The question instead is whether under section 954, Haro may be convicted of more than one assault. In that regard, unlike *Wong,* a unifying "impulse, intention or plan" does not render multiple convictions improper. (See *People v. Kirvin, supra,* 231 Cal.App.4th at p. 1518.)

Haro also cites *People v. Oppenheimer* (1909) 156 Cal. 733 and *People Mitchell* (1940) 40 Cal.App.2d 204 for the proposition that multiple blows delivered during a single episode, even if carried out with different instrumentalities, cannot give rise to multiple assault convictions. But both *Oppenheimer* and *Mitchell* predate *People v. Harrison, supra*, 48 Cal.3d 321, which established that the proper analysis requires consideration of whether the charged crime was complete. (*Id.* at p. 329.) Indeed, following *Harrison*, the Court of Appeal in *People v. Johnson, supra*, 150 Cal.App.4th 1467 rejected an argument similar to Haro's, and held "that where multiple applications of physical force result in separate injuries, the perpetrator has completed multiple violations of section 273.5." (*Id.* at p. 1477.) Thus, Haro has failed to demonstrate that *Oppenheimer* and *Mitchell* compel reversal or that pursuant to section 954, he could only be convicted of a single assault.

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.                    BENDIX, Acting P.J.