Filed 12/30/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C078760 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF14619, CRF14496, CRF14608) |
| v. | |
| MARK ANTHONY GOODE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yuba County, Julia L. Scrogin, Judge.  Affirmed as modified.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Mark Anthony Goode guilty of burglary (count 1) for opening a metal storm door on a residence and attempted burglary (count 2) for jiggling a

window on the same residence a few seconds later. The trial court sentenced defendant to 16 months in prison for the burglary at the front door and to a consecutive eight months for the attempted burglary at the window, finding that defendant had "[t]wo separate intents to enter and burgle [the victim's] home."

On appeal, defendant contends his conviction for burglary must be reversed because, in his view, "[t]he evidence was insufficient to establish [he] actually opened the metal door," and, in any event, "there was zero evidence . . . that he actually put some part of his body on the interior side of that door." He further argues that he cannot be separately punished for the burglary at the front door and the attempted burglary at the window because the evidence showed only a single, indivisible intent: to enter the victim's residence to commit a theft.

We disagree with defendant that the evidence was insufficient to prove he committed a completed burglary at the front door, but agree that he cannot be separately punished for burglarizing the victim's home at the front door and then, only a few seconds later, attempting to burglarize the home through a nearby window. Accordingly, we will modify the judgment to stay the eight-month term on defendant's conviction of attempted burglary at the window (count 2) pursuant to Penal Code[1] section 654 and will affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was ultimately charged in this case with 27 different offenses, but only two of those offenses (counts 1 and 2) are implicated by defendant's arguments on appeal, so we limit our recitation of the underlying facts to those two.

The victim of the two offenses, David Aros, lived in a house in Marysville. At about 2:30 a.m. on April 2, 2014, Aros was sleeping on the couch in the living room of

---

[1] All further section references are to the Penal Code.

2

his house when he awakened to a sound that he thought came from the metal storm door on the front door of the house. According to Aros, the storm door makes a particular sound when it opens and particularly when it closes and he thought he heard that sound, but he was not sure at first because he had been asleep. Aros "kind of stood up," and then "about a few seconds after that" he heard a little window on the side of the house "jiggling," like someone was trying to open it. That's when Aros "knew for sure" that he was not just hearing things and was "positive" he "did hear" the storm door.

After hearing the sound at the window, Aros looked out the back window of the house and saw someone he identified at trial as defendant.

Following the incident, Aros talked to a Marysville police officer and told the officer he was not sure if someone had tried to open the front door.

Defendant was ultimately charged with one count of first degree burglary and one count of attempted first degree burglary for the incident at Aros's house.

The prosecutor argued defendant was guilty of burglary because the opening of the storm door constituted an entry into the house and defendant was guilty of attempted burglary for trying the side window.

The jury found defendant guilty of both the burglary at the front door and the attempted burglary at the side window. The trial court imposed a term of 16 months for the burglary (consecutive to the principal term on a different conviction) and a consecutive term of eight months for the attempted burglary, finding that defendant had "[t]wo separate intents to enter and burgle [Aros's] home," which "warrants a separate punishment." With the terms imposed on the various other charges of which the jury found him guilty and an on-bail enhancement allegation the court found was true, the court sentenced defendant to an aggregate term of 12 years in prison and one year in jail. Defendant timely appealed.

3

DISCUSSION

I

*Sufficiency Of The Evidence Of Burglary*

Where, as here, a defendant challenges the sufficiency of the evidence to support his conviction, "[t]he standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence that is reasonable, credible and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' [Citation.] 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the [finder of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [finder of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

"An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "[A] jury may not rely upon unreasonable inferences, and . . . '[a]n inference is not reasonable if it is based only on speculation.' " (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact]." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

"A person who 'enters any house . . . with intent to commit . . . larceny or any felony is guilty of burglary.' (§ 459.) It has long been settled that the slightest entry by

4

any part of the body or an instrument is sufficient . . . ." (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.) "For an entry to occur, a part of the body or an instrument must penetrate the outer boundary of the building." (*Ibid.*)

Here, defendant does not dispute that the storm door -- like a screen on a window -- constituted the outer boundary of Aros's home. (See *People v. Valencia* (2002) 28 Cal.4th 1, 13 ["penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute"], disapproved on other grounds by *People v. Yarbrough* (2012) 54 Cal.4th 889, 894.) He argues, however, that the evidence was insufficient to prove he entered the house at the front door either because there was no substantial evidence that he "actually opened the metal outer door" or because "there was zero evidence that he did anything more than that, i.e., that he actually put some part of his body on the interior side of that door." As we will explain, we disagree with defendant on both points.

In arguing there was no substantial evidence that he opened the storm door, defendant draws from his summary of Aros's testimony the conclusion that Aros only "*thought* someone had opened the outer door," (italics added) but he was never "sure he heard it." But that is not a fair conclusion from Aros's testimony because defendant's summary of that testimony is incomplete.

It is true, as defendant notes, that Aros testified he initially was not sure that what he heard was the storm door. Once he heard someone jiggle a window, however, Aros then became "positive" that he had, in fact, heard the sound made by the storm door, and he held firmly to that testimony even in the face of vigorous cross-examination on the point.

On direct examination, Aros testified, "I did hear it," referring to the sound of the storm door, but that he "wasn't sure *when it first happened*." (Italics added.) He then testified that when he heard the jiggling at the window, that was when he "knew for sure" that he was not just "hearing things."

5

On cross-examination, defense counsel established that Aros "[d]efinitely heard the window" and then asked, "But [you] never heard the front door?" Aros replied, "No. I did hear the screen. I wasn't sure because I was woken up. Because you're sleeping, and then you get woken up, so then I'm like, 'Am I dreaming? Am I hearing things?' That type of thing." As defense counsel continued to pursue the point, she asked Aros, "So you're not positive about the door, but you're positive about the window?" He responded, "Yes," and she followed with, "Okay. But not positive about the door?" Aros replied, "Well, after the window, then I am positive, yeah. But, I mean, that's why I was woken up."

When his testimony is read as a whole and construed in the light most favorable to the jury's verdict, Aros can be understood to have testified that while he was initially not sure he had heard the storm door because he had been sleeping, when he heard the jiggling at the window he became positive that what he had heard *was* the storm door. To the extent defendant suggests otherwise, there is nothing improper about the fact that Aros's "conclusion that someone had opened the [storm] door was influenced by his later hearing someone fiddling with a side window." It is a common human experience to interpret sensory input by reference to surrounding circumstances. Here, Aros's initial uncertainty as to whether the sound he heard came from the storm door disappeared when he heard someone jiggling the nearby window, because he drew the reasonable conclusion that the person who had just jiggled the window must have opened the storm door seconds before. Also, to the extent defendant tries to cast doubt on Aros's testimony because Aros told the police he was not sure if someone had tried to open the front door, that argument goes nowhere because Aros can be understood to have been referring to *the front door itself*, rather than *the storm door*, when talking to the police. Indeed, that interpretation of Aros's statement to the police is most consistent with his testimony that he became certain that the first sound he heard came from the storm door after he heard someone jiggling the nearby window a few seconds later. Thus, while

6

Aros expressed uncertainty to the police as to whether someone had tried to open the front door, he *was* certain that someone -- who turned out to be defendant -- *had* opened the storm door.

For the foregoing reasons, there is substantial evidence in the record that defendant opened the metal storm door. Defendant argues, however, that even if that is true, "there was zero evidence that he did anything more than that, i.e., that he actually put some part of his body on the interior side of that door." According to defendant, "Aros did not report seeing or hearing any such thing" and "[t]here was no physical or forensic evidence to suggest [defendant] had done so"; therefore, there was no substantial evidence defendant penetrated the area behind the storm door.

We disagree with defendant on this point because, as we have noted, "[a]n appellate court *must* accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence." (*People v. Maury*, *supra*, 30 Cal.4th at p. 396, italics added.) Here, the circumstantial evidence was sufficient to prove that defendant opened the storm door and then, seconds later, jiggled the nearby window in an attempt to enter the house to commit a theft. From these facts, the jury also could have reasonably concluded that: (1) defendant opened the storm door as part of his initial attempt to gain entry to the house; and (2) he must have entered the area behind the storm door and unsuccessfully tried to open the front door before he proceeded to the window. It is true Aros told the police that he was not sure if someone had tried to open the front door, but the jury could have reasonably inferred that defendant must have done more than simply open the storm door, given that his intent was to enter the house to commit a theft. That Aros did not hear defendant trying to open the front door does not mean it did not happen. Aros was asleep on the couch and woke up only when he heard the storm door, which he testified "you hear . . . [more]" "when it shuts." Thus, the jury could have reasonably concluded that defendant opened the storm door, tried to open the front door, then when that was unsuccessful, closed the storm door and proceeded to the nearby

window and tried to gain entry to the house from there, and Aros awakened only in time to hear the sound the storm door made when it closed. This is a reasonable, albeit inferential, scenario based on all of the evidence, and as such we must conclude that the jury based its verdict on that scenario, which it was entitled to do. Accordingly, there is no merit to defendant's challenge to his burglary conviction (count 1).

## II

### *Section 654*

Defendant next argues that the trial court erred in imposing a consecutive sentence on his conviction of attempted burglary because "the evidence demonstrated that the entry and attempted entry of the Aros residence through the front storm door and side window, respectively, were pursuant to the single objective of gaining access to that house and committing theft" and "there was no evidence that [defendant] had an opportunity to reflect after the first entry of the door yet nevertheless moved on to the window."

For their part, the People contend "[t]he trial court could logically infer that [defendant] had the opportunity to reflect and could have elected to cease his criminal behavior" because he "had to close the front door on the Sixth Street side of the house, decide to not leave the premises, elect to continue looking for an entry point, proceed from the front door around the corner to the Pine Street side of the house, identify the side window, decide he wanted to try to enter through the window, approach the window, and begin prying it."

We conclude that under the evidence here, defendant's course of conduct at the Aros residence was not divisible in time for purposes of section 654, and therefore the trial court erred in imposing a consecutive term for the attempted burglary.

In pertinent part, subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under

8

the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Even though section 654 refers to "[a]n act or omission," in *Neal v. State of California* (1960) 55 Cal.2d 11, the California Supreme Court "opined that '[f]ew if any crimes . . . are the result of a single physical act.' [Citation.] Accordingly, the relevant question is typically whether a defendant's ' "course of conduct . . . comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." ' [Citation.] To resolve this question, the *Neal* court announced the following test: 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 335-336.)

In *Correa*, the Supreme Court held that section 654 does *not* bar multiple punishment when a single act gives rise to multiple violations of the same criminal statute, overruling contrary dicta in a footnote in *Neal*. (*People v. Correa*, *supra*, 54 Cal.4th at pp. 334, 337.) The Supreme Court did not, however, overrule the principle from *Neal* that a course of criminal conduct constitutes one act for purposes of section 654 if all of the offenses committed in the course of conduct were incident to one objective. "But decisions since *Neal* have refined and limited application of the 'one intent and objective' test, in part because of concerns that the test often defeats its own purpose because it does not necessarily ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) For example, in *People v. Beamon* (1973) 8 Cal.3d 625, disapproved on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896, the Supreme Court stated "that a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Beamon*, at p. 639, fn. 11.) "Thus, a finding that

9

multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*Kwok*, at p. 1253.)

In *Kwok*, the court determined that the question of whether a course of criminal conduct that involved multiple burglaries at the same residence is divisible in time depends on "whether the defendant had the opportunity to reflect after the first entry, and nevertheless entered the premises again" and on whether "each successive offense created a new risk of harm." (*People v. Kwok*, *supra*, 63 Cal.App.4th at pp. 1254, 1255.) On the latter point, the court pointed out that "[l]aws against burglary are primarily designed not to deter trespass or the supporting theft or felony intended by the burglar, but rather ' ". . . to forestall the germination of a situation dangerous to personal safety." ' " (*Id.* at p. 1256.) The court also observed that because the defendant there "entered the house on two separate occasions nine days apart, the factual situation [wa]s distinguishable from the scenario in which a burglar makes repeated entries in rapid succession." (*Id.* at p. 1257.)

Here, there is no dispute that defendant acted with one criminal objective when he opened the storm door, then tried to enter the house through a nearby window -- the objective of gaining entry to the house and committing a theft inside. The question is whether the trial court properly treated the two offenses as parts of a course of conduct that was divisible in time -- or, in the words of the *Kwok* court, as having been "committed on different occasions" (*People v. Kwok*, *supra*, 63 Cal.App.4th at p. 1237) -- because of the time that elapsed between defendant's opening of the storm door and his attempt to enter the house through the window. According to the People, the "few seconds" that elapsed between the incident at the door and the incident at the window, while short, were nonetheless sufficient to allow the trial court to reasonably conclude that defendant "had the opportunity to reflect and could have elected to cease his criminal

10

behavior," and therefore the court permissibly treated the burglary and the attempted burglary at Aros's house as two separate acts that could be separately punished.

Where, as here, "the facts are undisputed[,] it is a question of law whether section 654 should be applied." (*People v. Galvan* (1986) 187 Cal.App.3d 1205, 1218.) The evidence here showed that defendant tried to gain entry to Aros's house through the front door, then a few seconds later tried to gain entry through a nearby window. As a matter of law, we conclude the lapse of a few seconds between the two acts was not sufficient to make defendant's course of conduct divisible in time, such that he could be punished separately for each act.

The People's assertion that the few seconds that elapsed between the two acts were sufficient to allow defendant to reflect and decide whether to continue his criminal conduct, while literally true, does not fully answer the question of whether separate punishment was permissible under section 654. As the court explained in *Kwok*, time to reflect *is* relevant, but so is whether each offense created a new risk of harm. (*People v. Kwok*, *supra*, 63 Cal.App.4th at pp. 1255-1256.) " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation -- the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.' " (*People v. Gauze* (1975) 15 Cal.3d 709, 715, quoting *People v. Lewis* (1969) 274 Cal.App.2d 912, 920.) Here, the People do not point to any evidence suggesting that defendant's attempt to open a window a few seconds after he tried to open the front door created a new risk of a dangerous confrontation between him and the occupants of the house. So far as can be determined from the evidence presented, the window defendant tried to open was in the same room as the front door, and Aros was the only occupant of that room at the time. The risk that a situation dangerous to public safety would germinate was no greater as a result of defendant's attempt to enter that room by way of the window than it was a few

11

seconds earlier as a result of defendant's attempt to enter the room through the front door. Under these circumstances, we conclude section 654 precluded the imposition of punishment for the attempted burglary at the window separate from the punishment for the burglary at the front door. Accordingly, the trial court erred in not staying the sentence on the attempted burglary conviction under section 654.

DISPOSITION

The judgment is modified to stay the eight-month term on defendant's attempted burglary conviction (count 2) pursuant to section 654. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward the amended abstract to the Department of Corrections and Rehabilitation.

/s/_____<br>Robie, J.

We concur:

/s/_____
Blease, Acting P. J.

/s/_____
Hull, J.