Filed 1/29/21  P. v. Jennings CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076915 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD278037) |
| JEROLD ANTHONY JENNINGS, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed.

Sheila OConnor for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jerold Anthony Jennings, Jr. of two counts of burglary (Pen. Code, § 459[1]) stemming from his break-in at a building in downtown San Diego.  After trial, Jennings admitted two serious felony priors and three strike priors.  The trial court struck two strike priors and sentenced Jennings to 12 years and 4 months in state prison.  On appeal, Jennings raises two claims of error.  He asserts (1) the trial court was required under section 654 to stay the sentence on one of the two burglary convictions because the crimes were a single, indivisible course of conduct and (2) that the court erred by denying his request for juror identification information.  We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Around 7:00 a.m., Jennings broke into a three-story, mixed use building in downtown San Diego housing commercial space on the first floor, including a vape shop, and 20 residential units on the upper floors.  Jennings entered the building by climbing the fire escape to the roof, opening a hatch on the roof that led to a crawl space above the third floor and crawling into the space, and then breaking through the ceiling into the hallway.  One of the tenants living in a third-floor apartment, Eric S., was awakened by a crash, but assumed it was construction noise and fell back asleep.  Minutes later Eric was awakened again by the sound of his front door, which was not locked, slowly opening.  He assumed it was his partner coming in and went back to sleep.

Around the same time, the building's onsite manager, Kenneth S., was awakened in his second-floor unit by a thudding sound.  Kenneth went out the second-floor fire escape door to investigate and heard the third-floor fire escape door shut above him.  Kenneth saw a man he had never seen before,

---

[1]    Subsequent undesignated statutory references are to the Penal Code.

Jennings, coming down the fire escape stairs towards him. When Kenneth asked Jennings what he was doing, Jennings responded "Fuck you." Jennings was carrying an ashtray that had been on the third-floor fire escape platform, a small mallet from a fire extinguisher box he had broken, and a pair of sneakers from a rack outside Eric's door in the third-floor hallway.

Kenneth told Jennings he was calling the police. Jennings then moved aggressively toward Kenneth with the mallet raised, and said, " 'You're going to call the cops, I'll fucking kill you.' " Kenneth went back inside, closed the door behind him, and called 911. While on the phone with 911, Kenneth could see Jennings on the sidewalk near the building pushing Kenneth's grey cart. Kenneth then heard breaking glass, followed by the vape shop's security alarm.

Several police officers responded to the scene. Officers discovered a makeshift ladder leading to the vape shop's broken window. Kenneth's cart was nearby with Eric's sneakers on it. Jennings was inside the vape shop and his pants were covered with drywall. An officer watched Jennings pull the hammer from his sweatshirt pocket and place it on a couch in the vape shop. A video surveillance system in the vape shop also recorded Jennings inside the store.[2]

When police ordered Jennings to exit the store, he said he was locked in. An officer directed Jennings to exit using the makeshift ladder. Jennings

---

[2] One of the store's employees recognized Jennings in the surveillance video from an interaction two days earlier. Jennings had been inside the store during business hours browsing for about 30 minutes. Jennings told the employee he had an account at the store and wanted to make a purchase on credit. The employee told Jennings the store did not offer credit and Jennings left.

emerged in a new hat and carrying a vape device and cartridges, all of which came from the store.

Upstairs, Eric had woken up and found his front door open. He realized his partner had not opened the door as he thought since she was not home. Items that the family kept in the hallway next to their front door were in disarray. A canvas bag that had been inside the apartment was in the hallway filled with other items that Jennings had brought out from inside the apartment.

Jennings was taken into custody and eventually charged with witness intimidation (§ 136.1, subds. (b)(1), (c)(1)), two counts of burglary (§§ 459, 460, subd. (a)), and misdemeanor vandalism (§ 594, subds. (a), (b)(1)). The information also alleged two serious felony priors and three strike priors. Before trial, the court suspended criminal proceedings under section 1368 and ordered a mental competency examination. Thereafter, the parties stipulated to a competency report and the court found Jennings competent to stand trial.

After a four-day trial, the jury convicted Jennings on all four counts, but rejected the allegation that the vandalism to the vape store was over $400. Before sentencing, Jennings admitted the two serious felony priors and three strike priors. At the sentencing hearing, the court denied Jennings's request for a new trial based upon jury misconduct. The court struck two strike priors under section 1385 and imposed a sentence of 12 years and 4 months, consisting of the low term of two years for one count of burglary, doubled because of a strike, two years consecutive for the witness intimidation conviction, 16 months consecutive for the second conviction of burglary, five years consecutive for the prior serious felony, and credit for time served for the misdemeanor vandalism count. The court credited

4

Jennings with 477 local days and 70 custody credits under section 2933.1 for a total of 542 days. The court also imposed mandatory fines and fees, and victim restitution.

## DISCUSSION

### I

### *Section 654*

Jennings first contends that the trial court erred by failing to find that his theft of Eric's shoes was merely incidental to his theft from the vape shop, requiring a stay of sentence for one of the burglary convictions.

### A

The presentencing probation report stated "there were no PC654 issues. Although these incidents all occurred at around the same time, they were each separate and distinct from each other." Jennings did not raise section 654 at the sentencing hearing and, as stated, the trial court imposed consecutive sentences on all convictions.

### B

Section 654, subdivision (a) generally prohibits the imposition of multiple punishments for offenses arising out of a single act or indivisible course of conduct.[3] (§ 654, subd. (a); *People v. Hester* (2000) 22 Cal.4th 290, 294.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one

---

[3] The provision states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).)

objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) "The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135 (*Liu*).)

"If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one." (*Liu, supra*, 46 Cal.App.4th at p. 1135.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives, which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Ibid.*; see also *People v. Leonard* (2014) 228 Cal.App.4th 465, 498–499.)

"The trial court has broad latitude in determining whether section 654, subdivision (a) applies in a given case." (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) Such findings will be upheld on appeal if supported by substantial evidence. (*Ibid.*)

C

Critically here, "the statutory prohibition against multiple punishment is inapplicable to situations where multiple burglaries are committed at the same time and in the same building." (*People v. Williams* (1992) 9 Cal.App.4th 1465, 1474.) The fact that the burglaries are committed in

6

premises that share a structure is inconsequential. (See *People v. James* (1977) 19 Cal.3d 99, 119 (*James*) [rejecting defendant's argument that section 654 is inapplicable to burglaries committed in three different rented premises because they were all in the same office building]; *People v. O'Keefe* (1990) 222 Cal.App.3d 517, 521 [intrusions into multiple rooms in college dormitory were separate burglaries]; *People v. Bowman* (1989) 210 Cal.App.3d 443, 448–449 [defendant was separately punishable for eight burglaries of buildings and vehicles in a car dealership]; *People v. Church* (1989) 215 Cal.App.3d 1151, 1159 [entries into separately leased and locked offices in an office building were separate burglaries].)

Jennings contends that "a test for determining the separateness of alleged multiple burglaries for purposes of section 654 is whether the defendant had the opportunity to reflect after the first entry, and nevertheless entered the premises again." He then asserts that the test was not satisfied here because "the evidence showed that the act of entering the apartment building was simply a means to stealing from the vape business and the taking of the shoes from outside one apartment was merely an incidental act, and the acts were so closely connected, [Jennings] had no time to reflect on his original action as he always intended to break into the vape shop."

The evidence, however, supported the trial court's decision to reject this version of events. It showed Jennings climbed the fire escape and unlawfully entered the building from the roof, then entered Eric's apartment and took a pair of sneakers from the hallway just outside. Jennings then threatened Kenneth and left the building entirely before shattering the window of the vape shop and climbing into the store and taking several items. These facts amply supported the trial court's finding that the two burglaries were not a

7

continuous course of conduct, and that entering Eric's apartment and stealing his shoes was not incidental to the burglary of the vape shop. As stated in *James*, "[t]here is no doubt that if the premises had been located in ... separate buildings defendant could have been punished for ... separate burglaries; he is not entitled to ... exempt burglaries merely because his victims chose the same landlord."[4] (*James, supra*, 19 Cal.3d at p. 119.)

## II

### *Juror Information*

Jennings next contends the trial court erred by failing to grant his request for the identifying information of one of the jurors in order to further pursue a claim of juror misconduct. The Attorney General counters that the

---

[4]     Two cases Jennings relies on to support his argument, *People v. Goode* (2015) 243 Cal.App.4th 484 and *In re William S.* (1989) 208 Cal.App.3d 313 (*William S.*), are of no assistance. In *Goode*, the defendant opened the storm door to a single-family residence, then "a few seconds later" jiggled the window of the same house. (*Goode*, at p. 487.) The Court of Appeal reversed the trial court's failure to apply section 654, holding it was error because "there [wa]s no dispute that defendant acted with one criminal objective when he opened the storm door, then tried to enter the house through a nearby window—the objective of gaining entry to the house and committing a theft inside." (*Id*. at p. 493.) In contrast here, Jennings's burglaries were of two separately leased premises, an apartment and a commercial store.

     *William S.* also supports the trial court's sentencing decision. In *William S.* the defendant burglarized a residence, then left and returned several hours and reentered the same home. (*William S., supra*, 208 Cal.App.3d at p. 315.) The defendant argued on appeal that both crimes were one continuous course of conduct. (*Id*. at p. 316.) The court rejected the contention, concluding that the evidence showed the defendant had completed the initial crime, then had time to reflect before going back to commit a second burglary. (*Id*. at p. 317.) Likewise here, Jennings had engaged in a confrontation with Kenneth and exited the building before smashing the vape shop window and entering again. As in *William S.*, "[s]ubstantial evidence supports the trial court's finding of multiple burglaries." (*Id*. at p. 318.)

claim of error was forfeited by Jennings's failure to obtain a ruling on the request and, even if not forfeited, the court's de facto denial was not an abuse of its discretion.

A

Over three months after the jury rendered its verdict, Jennings brought a motion for new trial under section 1181 based on juror misconduct. The motion alleged that "multiple jurors considered the fact that Jennings did not testify and commented on what they would have liked to hear from him during deliberations." The basis for the allegation was an email, submitted with the motion, that Jennings's counsel received from a juror three weeks after trial. The email explained that the juror's friend, an attorney, encouraged him to reach out to defense counsel with his thoughts about her performance.

Among a list of other critiques, the email also stated, "I don't know if Mr. Jennings testifying would have been helpful or not, but many folks with doubt in their minds mentioned that hearing his version of events would've been helpful towards establishing findings more favorable to him." Jennings's attorney replied to the email with a list of questions about the critiques, including inquiring if the statements about Jennings's decision not to testify were made during jury deliberations. The juror responded that it "was mainly discussed during the lengthy wait between [reaching the] verdict and when we got called back into court."

In addition to seeking a new trial, the motion stated that if the court "finds that more information is necessary to determine whether Mr. Jennings was prejudiced by the misconduct during jury deliberations, the remaining jurors['] contact information is necessary to conduct follow up interviews."

9

The District Attorney opposed the motion for new trial, asserting that the email submitted in support of the motion was inadmissible hearsay and, even if properly considered, did not establish prejudicial misconduct. At the hearing on the motion, after a brief argument from Jennings's counsel, the trial court denied the motion. The court concluded that the statements in the email were inadmissible hearsay, but even if the court were to consider the information it did not show prejudicial misconduct by the jurors.

B

"After a verdict is entered, a criminal defendant may 'petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose.'" (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1430 (*McNally*), quoting Code Civ. Proc., § 206, subd. (g).) "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (Code. Civ. Proc., § 237, subd. (b).)

"Absent a showing of good cause for the release of the information, the public interest in the integrity of the jury system and the jurors' right to privacy outweighs the defendant's interest in disclosure." (*McNally, supra*, 236 Cal.App.4th at p. 1430.) Further, "a showing of good cause does not automatically entitle the petitioner to the jurors' contact information." (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 382.) "The trial court may deny the request for jurors' contact information if the court finds a compelling interest for nondisclosure." (*Ibid*.) "Compelling interests include jurors' safety and the need for finality if a long period of time has elapsed since trial." (*Ibid*.)

"Our Supreme Court has cautioned that requests to access confidential juror records ' "should not be used as a 'fishing expedition' to search for possible misconduct ...." ' " (*McNally*, *supra,* 236 Cal.App.4th at p. 1431.) "We review the denial of a petition for disclosure for an abuse of discretion." (*People v. Cook* (2015) 236 Cal.App.4th 341, 346.)

C

As the Attorney General points out, during the hearing on Jennings's motion for a new trial, his counsel did not seek a specific ruling from the trial court on his request for juror identifying information. To avoid forfeiture, Jennings now argues that requesting a ruling would have been futile since the court stated it saw no misconduct "based on the information I have from this email, and any further motion for a new trial would be denied." We do not agree with Jennings this statement shows that seeking a ruling on his request for juror information would have been futile. The trial court's ruling indicates only that any additional request for new trial based on the same information contained in the email in question would be denied. Thus, we agree with the Attorney General that the issue is forfeited. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 984 ["failure to press for a ruling waives the issue on appeal"].)

Even if we were to conclude Jennings had not forfeited the issue, however, we still would not find the court abused its discretion by denying the request. First, the evidence relied on by Jennings to support the request were emails from a juror received months before the request was made recounting statements by other jurors. This was insufficient to satisfy the requirement of Code of Civil Procedure section 237, which specifically requires such requests be supported by a declaration. (Code Civ. Proc., § 237, subd. (b).) Additionally, the statements by the juror constituted inadmissible

11

hearsay.  This "hearsay [wa]s not sufficient to trigger [the] court's duty to make further inquiries into a claim of juror misconduct."  (*People v. Hayes* (1999) 21 Cal.4th 1211, 1256.)

Finally, even if the statements are taken as true and admissible, it does not establish the trial court abused its discretion by rejecting the request for jurors' identifying information.  The statements establish only that jurors may have made statements concerning Jennings's failure to testify after the jury rendered its verdict while they waited for the parties to assemble for the verdict reading.  The emails do not establish that any juror based his or her decision on Jennings's failure to testify, misconduct that would warrant further investigation.  They showed only that Jennings's decision was a topic of conversation *after* the jury deliberated.  (See *People v. Avila* (2009) 46 Cal.4th 680, 727 [There is "no substantial likelihood a passing comment at this stage of the proceedings regarding the failure to testify prejudiced defendant in any manner"].)  Indeed, the juror who wrote the email stated that "no one seemed to hold [Jennings's failure to testify] against him." Jennings has not shown the court's denial of his request for juror identification information was an abuse of its discretion.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


O'ROURKE, J.

12