Filed 11/17/25  P. v. Sorokin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>YEVGENIY N. SOROKIN,<br><br>    Defendant and Appellant. | C100335<br><br>(Super. Ct. No. P121CRF0150) |

Defendant Yevgeniy Sorokin repeatedly assaulted the mother of his two children while they lived together on a rural property in El Dorado County.  The mother also had a daughter from a prior relationship (the daughter) who lived with them on the property.  Defendant had sexual intercourse with the daughter and forced her to orally copulate him.  She was six or seven years old when the sexual abuse began, and it continued until she was 10 years old.

A jury found defendant guilty on five counts of sexual intercourse with a child 10 years of age or younger, five counts of oral copulation with a child 10 years of age

1

or younger, two counts of assault with a deadly weapon, two counts of inflicting corporal injury on a cohabitant, and one count of making a criminal threat. The trial court sentenced defendant to state prison for an indeterminate term of 200 years to life, plus a consecutive determinate term of six years eight months.

Defendant now contends (1) the evidence is insufficient to support the count 9 conviction for sexual intercourse, (2) the trial court erred by admitting evidence of certain uncharged acts of domestic violence, (3) the trial court should have stayed the sentence imposed for either assault with a deadly weapon (count 11) or inflicting corporal injury on a cohabitant (count 12), and (4) the abstract of judgment must be corrected.

We conclude (1) defendant has not established insufficiency of the evidence; (2) his claim of evidentiary error lacks merit; (3) we agree the trial court should have stayed the sentence imposed on either count 11 or count 12, each of which was based on the same assault and committed with the same intent and objective; and (4) given that resentencing is necessary, we need not address correction of the abstract. We will affirm defendant's convictions, vacate the sentence, and remand the matter for resentencing.

BACKGROUND

The mother met defendant in high school. Years later, they started dating and moved to a rural property in El Dorado County. The mother had a daughter from a prior relationship. The daughter initially lived with her grandmother, but visited the property frequently. The mother and defendant had two children together, born in 2016 and 2019. About a year after the younger child was born, the daughter moved to the property. The mother left defendant about a year later, taking the children with her, because of repeated acts of intimate partner violence inflicted upon her by defendant. After the relationship ended, the daughter disclosed that defendant had sexually abused her.

Defendant became physically abusive toward the mother about three years before the relationship ended. The mother explained: "It started with him hitting me in the

2

presence of his parents or slapping me on the face in the presence of other people when he didn't like something."

The first charged incident of intimate partner violence occurred in October 2019, when the youngest child was a few months old. The mother was breast feeding the child on a mattress next to his crib when defendant came into the room and started hitting her with a wooden board. The mother was not sure what triggered the assault, but she responded by covering the child with her body as defendant struck her arms and shoulder with the board. When the board broke, he grabbed a nearby karaoke machine and used it to continue the assault. The mother stated: "He was beating me everywhere. I was crying. I was shouting, 'Stop. Don't do this,' but he continued and he beat me until the karaoke [machine] broke into pieces." Defendant then struck her with his fists. The mother eventually managed to get up and run out of the room, but not before defendant grabbed a second piece of wood and hit her in the back a final time. The mother left the house, but returned a short time later because she did not want to leave her children with defendant.

As a result of the incident, the mother had bruising on her shoulder, back, and head. She was in pain for about two weeks. The incident supported one count of assault with a deadly weapon (count 11) and one count of inflicting corporal injury on a cohabitant (count 12).[1]

The second charged incident of intimate partner violence occurred in December 2020, shortly before the mother left defendant. As the mother and daughter went to a restroom at a gas station, she inadvertently wore a sweater backwards. Defendant accused her of not being herself because her sweater was on backwards, and claimed the daughter's father had been in the restroom with them. When they got back to the

---

[1] One count of making a criminal threat (count 13) was also based on this incident, but that charge was dismissed by the prosecution before the matter went to the jury.

property, defendant hit her in the face, chest, and abdomen, kicked her legs, and threatened to kill her. Later he threw beer bottles at her, grabbed her by the hair, picked up a serrated bread knife, and held the knife to her throat. Defendant woke up the daughter, and while holding the knife to the mother's throat, he asked the daughter whether she was really her mother. The daughter said she was. Defendant asked her to "think really well" and be "really sure" because he would "cut her throat" if she was not her mother. The daughter again said she was. Defendant let the mother go and said that the daughter was the only reason he did not "cut [her] head off." The incident supported one count of assault with a deadly weapon (count 14), one count of inflicting corporal injury on a cohabitant (count 15), and one count of making a criminal threat (count 16).

Defendant was also sexually abusing the daughter. It began when she was six or seven and continued until she was 10 years old. Defendant's abuse consisted of him touching and kissing her, engaging in sexual intercourse with her, and forcing her to orally copulate him. She circled body parts on a diagram to identify where defendant touched her, and to indicate that she was referring to defendant's penis and her vagina.

During a forensic interview, the daughter described five specific incidents of sexual abuse. At the time of the interview, the daughter did not have a word for either her vagina or defendant's penis. She referred to her vagina throughout the interview as "here," "this," "there," and "my thing," often while pointing to her groin area. The first time she used the word "here" and pointed to her groin area, she said in response to follow-up questioning that she was referring to the part of her body that she used for "peeing." The daughter referred to defendant's penis as "his dip" throughout the interview. In the context of the interview as a whole, as well as the daughter's trial testimony, it is clear she was referring to defendant's penis. For ease of reference, we use "penis" and "vagina" when describing the five incidents.

The first incident the daughter described in the forensic interview happened when she was six or seven years old. She was at the house with defendant while the mother

was at work. Defendant kissed her on the lips and put his penis inside her mouth and vagina. Defendant told her to keep it a secret or he would kill her.

The second incident was described in greater detail during the forensic interview. Defendant put the daughter on a bed and started kissing her. She tried to get away but he pulled her hair to keep her on the bed. Defendant took off his clothes, undressed the daughter, and put his penis in her mouth and vagina.

In the third incident, defendant did "the exact same thing," undressing them, kissing her, and putting his penis in the daughter's mouth and vagina.

The fourth incident immediately followed the third. Defendant got up from the bed, put his clothes back on, and told the daughter they should go outside. The daughter put her clothes on and went outside with defendant. They walked behind the trailer and defendant put his penis in her mouth. He then took her pants off, penetrated her vagina with his penis, and again put his penis in her mouth.

The fifth incident occurred when the daughter was 10 years old. While in the woods, defendant forced the daughter to the ground, kissed her, and put his penis in her mouth and vagina.

Each of the incidents of sexual abuse supported one count of sexual intercourse with a child 10 years of age or younger (counts 1, 3, 5, 7, and 9) and one count of oral copulation with a child 10 years of age or younger (counts 2, 4, 6, 8, and 10).

In addition to the testimony from the mother and the daughter concerning the charged offenses, they also testified regarding uncharged acts of domestic violence. We describe those incidents in the discussion portion of the opinion.

DISCUSSION

I

Defendant contends the evidence is insufficient to support his count 9 conviction for sexual intercourse based on the fifth incident.

5

In assessing the sufficiency of the evidence, we must determine " 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We must 'view the evidence in the light most favorable to the People' and 'presume in support of the judgment the existence of every fact the trier [of fact] could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' [Citation.]" (*People v. Flores* (2020) 9 Cal.5th 371, 411.)

Additionally, as the appellant, it is defendant's burden to demonstrate error on appeal (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549), and he must provide this court with an adequate record for that purpose (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1048, fn. 1). Where video evidence was admitted at trial that might support the existence of a disputed fact, and the appellant does not include the video evidence in the appellate record, "we presume that the videotape contained evidence showing the [existence of the disputed fact]." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 718 (*Mendoza*).)

The elements of sexual intercourse with a child 10 years of age or younger are the following: (1) the defendant engaged in an act of sexual intercourse with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79.) "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (*Ibid*.)

Defendant argues the evidence is insufficient to support the jury's finding that he penetrated the daughter's vagina with his penis during the fifth incident. As defendant correctly observes, although the daughter confirmed the other incidents of sexual abuse during her trial testimony, she said she did not remember an incident in the woods. Thus, the only evidence supporting the occurrence of that incident was her prior statements made during the forensic interview. With respect to those statements, relying exclusively

6

on the transcript of the videotaped interview, defendant argues: "The only statement suggesting the possibility of sexual intercourse is [the daughter's] statement that 'he put a dip . . . in my mouth and put his dip in here.' " According to defendant, "The statement is ambiguous, and thus does not prove by substantial evidence that there was penetration of the vagina or genitalia by the penis."

As previously mentioned, although the daughter did not use the word "vagina" during the forensic interview, she referred to her vagina throughout the interview as "here," "this," "there," and "my thing," often while pointing to her groin area. The daughter referred to defendant's penis as "his dip" throughout the interview. When describing the fifth incident, she said that defendant "put his dip in here." The transcript does not indicate that she pointed to her groin area when she made the challenged statement, but we have not been provided with the video to see for ourselves whether the daughter pointed to her groin area when making the statement.[2] The jury was instructed that the video was the evidence, not the transcript. During the People's closing argument, the prosecutor stated that the daughter "rubbed her vagina" when she said that defendant put his penis "in here" while describing the fifth incident. The prosecutor's statement is not evidence, but it highlights the importance of the video evidence. Because defendant, as the appellant, has the burden of providing a record that affirmatively demonstrates error, but did not include the video of the daughter's forensic interview, we must presume the video contained evidence showing that the daughter was referring to her vagina when

---

[2] Rule 8.320(e) of the California Rules of Court states, in relevant part: "Exhibits admitted in evidence . . . are deemed part of the record, but may be transmitted to the reviewing court only as provided in rule 8.224." Rule 8.224(a)(1) of the California Rules of Court states: "[A] party wanting the reviewing court to consider any original exhibits that were admitted in evidence . . . but that were not copied in the clerk's transcript under rule 8.122 or the appendix under rule 8.124 must serve and file a notice in superior court designating such exhibits."

7

she said defendant put his penis "in here."  (See, e.g., *Mendoza, supra*, 206 Cal.App.4th at p. 718.)

But even without the presumption, it is reasonable to infer that "here," as used in that specific context, meant what it meant throughout the interview, i.e., the daughter's vagina.  Indeed, when describing the fifth incident, the daughter said that defendant made her "do those things" again.  It is reasonable to infer that "those things" were the same things she had described four other times:  defendant putting his penis in her mouth and vagina.  The first time she referred to her vagina as "here," she said in response to follow-up questioning that she was referring to the part of her body that she used for "peeing."  Her trial testimony confirmed that defendant put his penis in her vagina many times.  Thus, regardless whether the daughter motioned to her vagina when describing the fifth incident during her forensic interview, when viewed in the context of her entire interview and her trial testimony, a reasonable jury could have concluded beyond a reasonable doubt that defendant penetrated her vagina with his penis during the fifth incident, just as he did during the first, second, third, and fourth incidents.

Defendant's sufficiency challenge lacks merit.

## II

Next, defendant claims the trial court erred by admitting evidence of certain uncharged acts of domestic violence.

## A

Defendant moved in limine to exclude evidence of uncharged misconduct under Evidence Code section 1101.[3]  Acknowledging that section 1109 allows the admission of uncharged domestic violence, notwithstanding section 1101, "if the evidence is not

---

[3] Undesignated statutory references are to the Evidence Code.

inadmissible pursuant to [s]ection 352" (§ 1109, subd. (a)), defendant argued that admission of any uncharged domestic violence would violate section 352.

The People moved in limine to admit such evidence, arguing that defendant's prior acts of domestic violence were highly probative of his propensity to commit the charged acts of domestic violence, and that the high level of probative value greatly outweighed any danger that admission of the evidence would consume too much time, cause undue prejudice, confuse the issues, or mislead the jury. The trial court denied defendant's motion and tentatively granted the People's motion.

The first challenged portion of the mother's testimony has already been mentioned. The mother testified that defendant assaulted her at his parents' house. She said "he slapped me on the face once in front of everybody who was there."

The second challenged portion of her testimony described another incident that occurred while the mother and defendant were in a car together. While the mother was driving, defendant held a knife to her throat and told her to drive faster because he thought somebody was following them. As the mother sped up, defendant told the children seated in the back seat to open their doors. The mother yelled at defendant, asking what he was doing and saying he was going to kill the children. Defendant "was indifferent" and told the mother to "go faster" because someone "was chasing him."

The third uncharged incident of domestic violence began with defendant calling the police to say they needed to take the mother because she was not his wife. When questioned, defendant hung up the phone, removed the battery, went outside and apparently slashed one of the mother's car tires. The next day he asked her for money so he could pick up an order. When the mother told him she did not have any money, defendant threw a kitchen appliance at her and told the children to "run into the woods because this is not your mother."

In another uncharged incident, defendant handed the daughter a BB gun and told her he would teach her how to shoot. He showed her how to aim by pointing the gun at

9

their dog. Defendant told the daughter to pull the trigger. The mother said the daughter "didn't want to, but she did it because she was afraid of him." The dog was hit in the leg and ran away yelping. The daughter chased after the animal with dog treats to make amends. The dog limped for a while but recovered.

B

Section 1109 provides, in relevant part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [s]ection 1101 if the evidence is not inadmissible pursuant to [s]ection 352." (§ 1109, subd. (a)(1).) The provision "supplants the usual rule of evidence that evidence of past conduct is not admissible to prove a defendant's conduct on a specified occasion." (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026 (*Hoover*).) However, "[e]ven if other act evidence is relevant and admissible under . . . section 1109, it must be excluded under section 352 where its probative value is substantially outweighed by the probability that its admission will consume too much time, cause undue prejudice, confuse the issues, or mislead the jury. . . . We review the admission of other act evidence for abuse of discretion." (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192 (*Merchant*).)

Defendant does not dispute that the challenged evidence qualifies as "other domestic violence" within the meaning of section 1109. Instead, he argues the trial court's admission of the evidence violated section 352.

Propensity evidence in the form of other acts of domestic violence is "uniquely probative of a defendant's guilt on a later occasion." (*Merchant, supra*, 40 Cal.App.5th at p. 1192.) That is why the Legislature enacted section 1109. As the legislative history states, such evidence " 'is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without

10

the propensity inference, the escalating nature of domestic violence is likewise masked.' " (*Hoover, supra*, 77 Cal.App.4th at pp. 1027-1028.) Similarly, in this case, each uncharged incident of domestic violence formed part of a larger pattern of violence, dominance, and control. As part of that pattern of violence, each event made it considerably more likely that defendant also committed the charged domestic violence offenses. The probative value was very high.

Nevertheless, "such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. [Citation.] This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." (*Hoover, supra*, 77 Cal.App.4th at pp. 1028-1029.)

Here, the trial court did not abuse its discretion in concluding the high probative value of the evidence was not substantially outweighed under section 352. The challenged evidence did not take an undue amount of time to present. The mother, who was already testifying about the charged offenses, provided most of the testimony concerning the other acts. The daughter also provided limited testimony about the other acts. The testimony did not take much time at all. Turning to the danger of undue prejudice, "[t]he prejudice that section 352 is designed to avoid is not the damage that naturally results from highly probative evidence, but rather the prospect of leading the jury to prejudge a person or focus on extraneous factors." (*Merchant, supra*, 40 Cal.App.5th at p. 1192.) Contrary to defendant's argument on appeal, the uncharged acts were not "likely to inflame the emotions of the jury" or cause the jury to "feel inclined to punish [him] by returning convictions for the charged offenses." This is because the charged offenses were more inflammatory than the uncharged acts of domestic violence. The uncharged acts were damaging to defendant's case, but only because they showed that he had a propensity to commit domestic violence against the

11

mother, which was precisely why the evidence was so probative. The challenged evidence also had a minimal likelihood of confusing or misleading the jury. The jury was instructed as to which acts were charged and which were not, as well as on the applicable burden of proof and the manner in which the jury could use the uncharged acts evidence. The prosecutor clearly separated the charged offenses from the uncharged acts and reiterated the proper burden of proof. There was no abuse of discretion.

Having concluded that the trial court did not abuse its discretion under section 352, we also reject defendant's argument that he was deprived of his constitutional right to a fair trial. " ' "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." ' [Citation.]" (*People v. Holford* (2012) 203 Cal.App.4th 155, 180.) The proper admission of the challenged evidence did no more than accurately portray defendant's relationship with the mother. Such evidence did not render defendant's trial fundamentally unfair. (*Id*. at p. 181.)

III

Defendant further asserts that the trial court should have stayed the sentence imposed on either the assault with a deadly weapon conviction (count 11) or the inflicting corporal injury on a cohabitant conviction (count 12) under Penal Code section 654. We agree.

"Penal Code section 654, subdivision (a), prohibits 'punish[ment] under more than one provision' for any 'act or omission that is punishable in different ways by different provisions of law.' " (*People v. Corpening* (2016) 2 Cal.5th 307, 309.) This section "applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to

12

one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551 (*Perez*).)

Whether a defendant possessed a single intent and objective is a factual question subject to substantial evidence review on appeal. (*Perez, supra*, 23 Cal.3d at p. 552, fn. 5; *People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.) However, where the facts are undisputed, whether Penal Code section 654 precludes multiple punishment is a legal question, subject to de novo review. (*People v. Goode* (2015) 243 Cal.App.4th 484, 493 (*Goode*); see also *Perez,* at p. 552, fn. 5 ["dimension and meaning of [Penal Code] section 654 is a legal question"].)

In *People v. Bui* (2011) 192 Cal.App.4th 1002, during a home invasion robbery, the defendant shot and seriously injured one of the inhabitants. (*Id*. at pp. 1005-1006.) Among other crimes, he was convicted of attempted murder and mayhem based on the shooting, which consisted of three shots fired within seconds of each other, forming one transaction. (*Id*. at pp. 1015, 1009.) The appellate court concluded that Penal Code section 654 precluded multiple punishment for those counts, explaining: "There was no evidence defendant had independent objectives for the two crimes that would justify multiple punishment." (*Id*. at p. 1015; see also *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1552, 1560 [multiple punishment precluded where mayhem and assault convictions were based on a course of conduct in which the defendant threw the victim down, punched her, took a box cutter that she tried to use to defend herself, and used the weapon to slash the victim].)

Here, the undisputed facts establish the following. The mother was breast feeding her infant child when defendant started hitting her with a wooden board. The mother covered the child with her body as defendant struck her arms and shoulder with the board. When the board broke, he grabbed a nearby karaoke machine and used that to continue the assault. When the karaoke machine broke, defendant struck her with his

fists.  The mother managed to run out of the room as defendant grabbed a second piece of wood and hit her a final time.

Count 11, assault with a deadly weapon, was pleaded as being based on the assault with the "wooden board" and the "stereo," i.e., the karaoke machine.  During closing argument, the prosecutor stated that count 11 was based on defendant using the board and count 12, inflicting corporal injury on a cohabitant, was based on him using the karaoke machine during "this whole transaction."  On appeal, the People assume defendant possessed the same objective when he hit the mother with the board and the karaoke machine -- to attack and injure her -- but they nevertheless argue he "had time to reflect between breaking the [board] and grabbing the karaoke machine."  It is true that "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; see *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)  However, in *Goode, supra*, 243 Cal.App.4th 484, this court held that multiple punishment was precluded for a burglary and an attempted burglary at the same residence where there was only a "lapse of a few seconds between the two acts." (*Id*. at p. 493.)  This separation of time "was not sufficient to make defendant's course of conduct divisible in time, such that he could be punished separately for each act." (*Ibid*.)  Moreover, the defendants in *Bui* and *Pitts* also had a moment of time between acts to reflect and renew their objective to kill or harm the victim, and yet the appellate courts concluded multiple punishment was precluded by Penal Code section 654.  We reach the same conclusion here.  On remand, the trial court must stay the sentence imposed on either the assault with a deadly weapon conviction (count 11) or the inflicting corporal injury on a cohabitant conviction (count 12) under Penal Code section 654.

## DISPOSITION

Defendant's convictions are affirmed, but his sentence is vacated, and the matter is remanded to the trial court for resentencing.  Among other things, the trial court shall

14

resentence under Penal Code section 654, as amended by Assembly Bill No. 518 (2021-2022 Reg. Sess.), with directions to stay execution of the sentence imposed on either the assault with a deadly weapon conviction (count 11) or the inflicting corporal injury on a cohabitant conviction (count 12).

                                                 /S/
                                        MAURO, J.

We concur:

     /S/
ROBIE, Acting P. J.

     /S/
KRAUSE, J.